## STATE of Tennessee

v.

## Harold W. HUMPHREYS.

Court of Criminal Appeals of Tennessee, at Nashville.

July 26, 2001.

Application for Permission to Appeal Denied by Supreme Court Dec. 31, 2001.

---

Lee Ofman, Franklin, TN, for appellant, Harold W. Humphreys.

Paul G. Summers, Attorney General and Reporter, Michael Moore, Solicitor General, John H. Bledsoe, Assistant Attorney General, Lee E. Dryer, Assistant District Attorney General, for appellee, State of Tennessee.

## OPINION

DAVID G. HAYES, J., delivered the opinion of the court, in which THOMAS T. WOODALL, J., and L.T. LAFFERTY, Sp.J., joined.

Harold W. Humphreys was found guilty by a Williamson County jury of driving under the influence, first offense. The trial court imposed a sentence of 11 months 29 days, suspended after service of fifteen days confinement. Humphreys challenges both his conviction and sentence raising the following issues on appeal: (1) the trial court's failure to suppress results of the BAC test; (2) the trial court's failure to instruct the jury as to the offense of driving while impaired, Tenn. Code Ann. § 55–10–418(a), as a lesser-included offense of driving under the influence; (3) the trial court's failure to dismiss a juror for cause; (4) the propriety of the prosecutor's opening statement; (5) the propriety of the prosecutor's alleged argumentative question to Humphrey during cross-examination; (6) the propriety of the prosecutor's closing argument; and (7) the length of the sentence imposed. Finding no error requiring reversal, we affirm both the judgment of conviction and the sentence imposed by the trial court.

## Background

On October 9, 1998, at approximately 7:00 p.m., Brentwood Police Officer David Hawtin was on uniform patrol when he observed the Appellant operating a motor vehicle southbound on Franklin Road in Brentwood. The Appellant turned onto Moores Lane toward the Cool Springs Mall area. Officer Hawtin observed the Appellant weave back and forth on the road four times within a one-half mile area. He explained that the Appellant would steer toward the "gutter line" then jerk back in the other direction. After the first two movements, Hawtin activated his blue lights and followed the Appellant's vehicle from Landings Drive to Moreland Boulevard. The Appellant repeated the pattern twice more after the lights were activated. Officer Hawtin explained that his patrol car's video and audiotape equipment was

activated automatically upon employment of the car's emergency lights. The Appellant slowed down but failed to yield.

Eventually, the Appellant stopped his vehicle in the lane of travel. Officer Hawtin then approached the vehicle on the passenger side via the sidewalk to avoid contact with the oncoming traffic. Standing at the passenger side window, Officer Hawtin first noticed a very strong odor of alcohol emanating from the Appellant. He also observed that the Appellant was slumped forward and his eyes were red and watery. The Appellant appeared sleepy or sedated and his speech was slurred. At this point, Officer Hawtin asked the Appellant to exit the vehicle.

Due to the Appellant's physical condition, Officer Hawtin escorted the Appellant to the safety of the sidewalk and then conducted several field sobriety tests with the Appellant. Based upon the Appellant's appearance and the Appellant's unsatisfactory performance on various field sobriety tests, Officer Hawtin placed the Appellant under arrest for driving under the influence. Officer Hawtin then discussed Tennessee's implied consent law with the Appellant and twice explained to the Appellant the one year driver's license revocation period that would result as a consequence of not submitting to breath or blood alcohol testing. The Appellant consented to a blood test.

The Appellant was then transported to the Williamson County Hospital where a sample of his blood was drawn in Officer Hawtin's presence. Laboratory testing established that the Appellant's blood sample contained an ethyl alcohol level of .28 percent. Based upon these facts, the Appellant was indicted on one count of driving under the influence, Tenn.Code Ann. § 55–10–401(a)(1), and, in the alternative, one count of driving with a blood alcohol con-

centration of .10 percent or more, Tenn. Code Ann. § 55–10–401(a)(2).

In his defense, the Appellant presented the testimony of his wife, Christine Humphreys. Mrs. Humphreys stated that, on the morning of October 9, 1998, the Appellant had accompanied her to Vanderbilt Hospital where she received treatment for multiple sclerosis. After lunch, Mrs. Humphreys was given medication to make her sleep. Mrs. Humphreys did not see her husband for the remainder of the day.

Andy Beecham, the Appellant's brother-in-law, testified that he met the Appellant at the Old Natchez Golf Course at 2:00 p.m. on October 9. At the time of their meeting, the Appellant appeared sober and had no sign or smell of alcohol about his person. Mr. Beecham and the Appellant played nine holes of golf with Richard Means, Mr. Beecham's uncle by marriage. They finished playing shortly before 5:00 p.m., and returned to the club house. Neither Mr. Beecham nor Mr. Means noticed that the Appellant appeared fatigued. At the club house, the Appellant ordered a beer. He then had a rum and Coke. Mr. Beecham left his companions shortly before 6:00 p.m. At this time, Mr. Beecham stated that the Appellant did not appear intoxicated. Dick Means testified that he remained at the club with the Appellant until the Appellant left. Mr. Means stated that he observed the Appellant consume one beer and two "rum and Cokes" after returning to the clubhouse. When Mr. Means and the Appellant left the clubhouse at approximately 7:00 p.m., the Appellant did not appear inebriated.

The Appellant testified that, on October 9, 1998, he was living in Georgetown, Guiana, South America due to his employment. The Appellant had returned to Tennessee to take care of his ailing wife. At approximately 7:00 a.m. that morning, the Appellant visited his wife at Vanderbilt Hospital.

The Appellant remained at the hospital until noon, when his wife suggested that he should meet with some of his friends for a game of golf while she slept. The Appellant went to play golf, arriving at the golf course at approximately 1:30 p.m. to meet Mr. Beecham and Mr. Means. The three men played nine holes of golf, concluding at approximately 5:00 p.m.

After their golf game, the three men went back to the clubhouse and each drank a twelve-ounce can of beer. It took approximately thirty minutes to consume the beer. After this beer, the Appellant drank a Captain Morgan rum and Coke. This mixed drink contained a single shot of rum which was eighty percent proof. It took the Appellant approximately thirty minutes to consume this drink. The Appellant then ordered and drank a second rum and Coke. The Appellant left the clubhouse at approximately 7:00. The Appellant was tired that day from traveling, spending a great deal of time at the hospital, and not sleeping well, having had only two hours of sleep.

The Appellant explained that he told the police officer that he had too much to drink in order to appease the police officer. He believed that if he told the officer what he wanted to hear, the officer would let the Appellant return to his hotel room. The Appellant testified that he believed his driving to be fine. He also explained that his statement to the police officer that he had consumed four "beers" was a "generic" term for alcoholic beverages in general. The Appellant stated, that when he was stopped, he was scared, was "outside of his elements," and under a lot of pressure. He has never encountered the police in this situation before. He did not feel that he was intoxicated at the time of his arrest. On cross-examination, the Appellant admitted that he had lied to the officer about what he had to drink. He also

agreed that being tired magnifies the effect of alcohol.

## I. Motion to Suppress

◼ Prior to trial, the Appellant filed a motion to suppress the results of the blood alcohol test, alleging that his consent to the blood test was not voluntarily, was taken in violation of his right to be free from unreasonable searches and seizures and was taken in violation of Tenn.Code Ann. § 55–10–406 (1998). At the subsequent hearing on the Appellant's motion, Officer David Hawtin testified that, on October 9, 1998, at 7:20 p.m. he stopped the Appellant's automobile after receiving a dispatch regarding an "erratic driver" in an "off-white color Lincoln Continental" and after observing the suspect vehicle making erratic movements. After administering field sobriety tests, Officer Hawtin determined that the Appellant was intoxicated and placed him under arrest. Officer Hawtin discussed the "implied consent" law with the Appellant. Specifically, Officer Hawtin recalled informing the Appellant that he needed to read the Implied Consent law about the blood sample and he needed to be aware of it. Officer Hawtin conceded, telling the Appellant that, "you need . . . to sign it and then you will be on your way to the hospital." Officer Hawtin admitted that he did not read the Implied Consent Law to the Appellant, despite having the form with him. Officer Hawtin did state, however, that he gave the Appellant the Implied Consent Law Form to read. The Appellant did not inform the officer that he could not read or that he did not understand the Implied Consent Law. The patrol car's videotape recorded at the scene was introduced at both the suppression hearing and the trial. The videotape contained the following colloquy between Officer Hawtin and the Appellant:

APPELLANT: You know I'm just a guy trying to get home.

OFFICER HAWTIN: I understand. What this says is "state law implied consent." What it says is that if you fail to provide me with a blood or urine blood or breath sample we will suspend your license whether you're convicted or not for one year. I need your signature right here. You may read that if you wish, that's fine.

APPELLANT: I think I have some glasses in there.

OFFICER HAWTIN: Do you want me to get your glasses ...

APPELLANT: What does this mean?

OFFICER HAWTIN: What it means is that if you, what it is telling you is that state law requires you to give me a sample of your blood or breath to determine how much you have had to drink tonight.

APPELLANT: Tonight?

OFFICER HAWTIN: Yes, tonight. And if you fail to do that, whether you are convicted or not, they will suspend your license for one year. That is what that is saying.

APPELLANT: All right.

The Appellant then signed the Implied Consent Form. The trial court asked Officer Hawtin why he did not read verbatim the Implied Consent Law to the Appellant. Officer Hawtin responded that he had never seen any law enforcement officer in this state read the Implied Consent Form verbatim. Furthermore, reading the form verbatim was not part of his training in this state.

The Appellant testified that he did recall Officer Hawtin discussing the Implied Consent Law with him. However, he stated that Officer Hawtin never informed him that he had the right to refuse blood or breath testing. Moreover, the Appellant did not read the Implied Consent Law Form and he was under the impression that he had no choice but to submit to the test. Without his glasses, the Appellant was unable to read and Officer Hawtin never obtained his glasses for him. The Appellant admitted that the signature on the Implied Consent Law Form was his signature. The Appellant is a college graduate and is an executive in a multinational corporation. He admitted that reading forms is not "too big a task for him." Notwithstanding his background, the Appellant maintained that he did not understand the form and he understood the officer to mean that he had to sign the form or lose his license.

With regard to the voluntariness of the Appellant's consent, the trial court made the following findings of fact and conclusions of law:

Ultimately, I am denying the motion to suppress but I am not sure that you understand that this is a closer case ... Based on this defendant's background and education and operating level that he testified to I believe it is disingenuous for him to make the distinction that he and his lawyer are attempting to make that when you are told 'refusal to take the test results in a penalty' that you don't understand that means you can refuse to take the test. I further find specifically as a matter of law that [Tenn.Code Ann. § ] 55–10–406 does not require specifically that the sentence be inserted that says if you refuse I won't give the test, it requires that the officer say I wish to take the test, or I request to take the test, or I need to take the test and that the defendant be advised of the consequences for refusing to do so.... But the testimony and the video or a portion of the video confirm that that minimum obligation was met. It further appears to me in at least one

case ... *King v. State*, ... that the appellate courts have said that there are not *Miranda* like admonitions that have to be given prior to the drawing of a blood sample in order to get a valid consent and there is not any procedure like that. But again, the case stresses that the person has to be advised that there is a penalty for refusing. And inherent in telling someone there is a penalty for refusing is telling them that they ... can refuse....

The Appellant contests the trial court's ruling, arguing that (1) Officer Hawtin's statements to the Appellant "were essentially commands," (2) the Appellant never read the Implied Consent Law Form, and (3) he "just complied with the officer's demand." Essentially, the Appellant complains that:

> because the officer led [him] to believe that he had no choice in the matter, [he] was a person "incapable of refusal" under Tenn.Code Ann. § 55–10–406(b). For that reason, the blood test should have been suppressed and the proper penalty should have been a loss of driver's license for one year.

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *See State v. Binette*, 33 S.W.3d 215, 217 (Tenn.2000); *State v. Daniel*, 12 S.W.3d 420, 423–424 (Tenn.2000) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). Indeed,

> [q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable infer-

ences that may be drawn from that evidence.

*Binette*, 33 S.W.3d at 217 (quoting *Odom*, 928 S.W.2d at 23). If the evidence does not involve questions of credibility, the reviewing court must examine the record *de novo* without a presumption of correctness. *See Binette*, 33 S.W.3d at 217. Notwithstanding the nature of the proof, the application of the law to the facts remains a question of law that requires *de novo* review. *Daniel*, 12 S.W.3d at 423.

The administration of a breath test for the detection of a person's blood alcohol level is a seizure of the person and a search for evidence within the purview of the Fourth Amendment of the United States Constitution. *State v. Michael A. Janosky*, No. M1999–02574–CCA–R3–CD, 2000 WL 1449367 (Tenn.Crim.App. at Nashville, Sept. 29, 2000) (citing *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)). The analysis of any warrantless search must begin with the proposition that such searches are *per se* unreasonable under the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution, subject only to a few well-delineated exceptions. *State v. Michael A. Janosky*, No. M1999–02574–CCA–R3–CD (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564 (1971); *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *State v. Tyler*, 598 S.W.2d 798, 801 (Tenn.Crim.App.1980)). One such exception to the warrant requirement includes exigent circumstances. *State v. Michael A. Janosky*, No. M1999–02574–CCA–R3–CD (citing *Schmerber*, 384 U.S. at 757, 86 S.Ct. at 1826). Based upon the fact that evidence of blood alcohol content begins to diminish shortly after drinking stops, a compulsory breath or blood test, taken with or without the consent of

the donor, falls within the exigent circumstances exception to the warrant requirement. *State v. Michael A. Janosky*, No. M1999–02574–CCA–R3–CD (citing *Schmerber v. California*, 384 U.S. at 770, 86 S.Ct. at 1836; *see generally State v. Krantz*, 174 Ariz. 211, 848 P.2d 296, 299 (App.1993); *State v. Taylor*, 12 Conn.App. 427, 531 A.2d 157, 160 (1987); *State v. Nickerson*, 132 Idaho 406, 973 P.2d 758, 762 (Ct.App.1999); *Village of Algonquin v. Ford*, 145 Ill.App.3d 19, 99 Ill.Dec. 148, 495 N.E.2d 595, 596 (1986)).

■ In addition to the exigent circumstances established by the nature of the evidence in cases involving intoxicated motorists, the statutorily created implied consent of the motorist permits the warrantless search of the motorist's breath or blood. *State v. Michael A. Janosky*, No. M1999–02574–CCA–R3–CD (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973) (voluntary consent exception to warrant requirement)). Under the express provisions of Tenn.Code Ann. § 55–10–406, "[a]ny person who drives any motor vehicle in the state is deemed to have given consent" to a test for blood alcohol or drug content, provided that the law enforcement officer has "reasonable grounds to believe such person was driving under the influence of an intoxicant or drug." Tenn.Code Ann. § 55–10–406(a)(1). Thereby, anyone who exercises the privilege of operating a motor vehicle in this state has consented in advance to submit to a breath alcohol test. Indeed, by virtue of the provisions of Tenn.Code Ann. § 55–10–406(a)(1), our legislature has declared that consent of all motorists is implied. Therefore, if probable cause exists to believe that (1) the suspect motorist has consumed intoxicating liquor and (2) evidence of the motorist's intoxication will be found if the blood is tested, *see Schmerber*, 384 U.S. at 768–

72, 86 S.Ct. at 1834–36; *see also State v. Greene*, 929 S.W.2d 376, 380 (Tenn.Crim. App.1995), it is unnecessary for law enforcement officers to obtain the voluntary consent of an individual motorist before administering a breath test for alcohol concentration level. *Id.*

■ Additionally, a motorist's right to refuse to submit to a breath test under Tennessee's implied consent law is not a constitutional right. *State v. Michael A. Janosky*, No. M1999–02574–CCA–R3–CD. Rather, the State of Tennessee, through its enactment of Tenn.Code Ann. § 55–10–406(a)(2) and (a)(3), has adopted a policy position prohibiting law enforcement officers from administering a breath or blood alcohol test against the motorist's will. *Id.* Instead, in an effort to avoid potentially violent confrontations between private citizens and law enforcement officers, the state has elected to permit the motorist to refuse the test. *State v. Michael A. Janosky*, No. M1999–02574–CCA–R3–CD (citing *South Dakota v. Neville*, 459 U.S. 553, 559–560, 103 S.Ct. 916, 920, 74 L.Ed.2d 748 (1983); *Krantz*, 848 P.2d at 299; *Bush v. Bright*, 264 Cal.App.2d 788, 789, 71 Cal. Rptr. 123 (1968); *Taylor*, 531 A.2d at 160). The right to refuse is not absolute; rather, the right to refuse will result in suspension of the motorist's driver's operator's license, assuming appropriate procedural protections are provided. *See* Tenn.Code Ann. § 55–10–406(b); *State v. Michael A. Janosky*, No. M1999–02574–CCA–R3–CD (citing *Neville*, 459 U.S. at 560, 103 S.Ct. at 920; *Mackey v. Montrym*, 443 U.S. 1, 17–19, 99 S.Ct. 2612, 2620–21, 61 L.Ed.2d 321 (1979)). Indeed, Section 55–10–406(a)(2) of the Tennessee Code Annotated provides:

Any *law enforcement officer* who requests that the driver of a motor vehicle submit to a test pursuant to this section for the purpose of determining the alco-

holic ... content of the driver's blood *shall,* prior to conducting such test, *advise the driver that refusal to submit to such test will result in the suspension of the driver's operator's license by the court.* *The court* having jurisdiction of the offense for which such driver was placed under arrest *shall not have the authority to suspend the license* of a driver who refused to submit to the test *if such driver was not advised of the consequences of such a refusal.*

(Emphasis added).

In the present case, the Appellant, by choosing to engage in a regulated activity, that of driving a motor vehicle, subjected himself to the provisions of Tenn.Code Ann. § 55–10–406. The Appellant was lawfully arrested for driving under the influence. His driving behavior, his demeanor, and his failure to complete the field sobriety tests satisfactorily formed the factual bases for the officer's inference that the blood test was likely to reveal evidence of the offense. The Appellant presented no evidence of his express refusal to submit to the breath test. The consent form signed by the Appellant informed him that he could refuse the test, but that if he refused, his driver's license would be suspended. Additionally, the videotape evidence reveals that Officer Hawtin advised the Appellant that if he failed to submit to a blood test that he would lose his license for one year. Contrary to the position adopted by the Appellant at the suppression hearing, the plain language of the statute does not require the officer to inform the Appellant of his right to refuse.[1] Rather, the plain language of the statute requires only that an officer advise a suspect that if the suspect refuses, he may have his license suspended. *See, e.g., State v. Kain,* 24 S.W.3d 816, 820 (Tenn. Crim.App.2000); *State v. Huskins,* 989 S.W.2d 735, 737 (Tenn.Crim.App.1998), *perm. to appeal denied,* (Tenn.1999); *State v. Ann Elizabeth Martin,* No. E1999–01361–CCA–R3–CD, 2000 WL 1273889 (Tenn.Crim.App. at Knoxville, Sept. 8, 2000). The Appellant is apparently a well-educated business executive. We assume he was capable of comprehending both the "Implied Consent Form" and the officer's advice. We also assume that he was capable of expressing his refusal to submit to the test. Moreover, his argument that his submission to the test was involuntary under Section 55–10–406(b) because he merely complied with the officer's demands is misplaced. Again, voluntary consent is unnecessary as consent has already been obtained by the act of driving the motor vehicle upon the public roads of this state. There is nothing in the record establishing that the Appellant was unable to refuse the test. Our law is clear that the only time "the test shall not be given" is when the motorist "refuses to submit" to the test.[2] There is no proof that the Appellant

---

1. The clear purpose of the admonition requirement is to warn drivers of the consequences of failing to comply with the implied consent law. *State v. Huskins,* 989 S.W.2d 735, 737 (Tenn.Crim.App.1998). The warning puts the driver on notice that if he refuses a blood alcohol test his license is subject to suspension. *Id.* This court has previously held that "[t]he language used in the statute makes it clear that the warning is *not* a *Miranda*-type warning that the driver is not compelled to give evidence against himself." *Id.* Accordingly, the failure to give the admonition does not result in suppression of the driver's blood alcohol test results. *Id.*

2. To hold otherwise would permit a motorist to submit to the test and, after obtaining an adverse test result, challenge the introduction of the BAC test results in the prosecution of the DUI charge as well as precluding citation of the defendant for non-compliance with the implied consent law. The Implied Consent Law permits introduction of either the BAC results or the suspension of the motorist's

refused to submit to the test. This contention is without merit.

## II. Lesser-included Offense of Adult Driving While Impaired

■ The Appellant next asserts that the trial court erred by failing to instruct the jury on the criminal offense of adult driving while impaired, Tenn.Code Ann. § 55–10–418(a) (1998), as a lesser-included offense of driving under the influence of an intoxicant, Tenn.Code Ann. § 55–10–401 (1998).

■ The question whether a given offense should be submitted to the jury as a lesser-included offense is a mixed question of law and fact. *State v. Guy William Rush*, 50 S.W.3d 424 (Tenn.2001) *(for publication )* (citing *State v. Smiley*, 38 S.W.3d 521 (Tenn.2001)). The standard of review for mixed questions of law and fact is *de novo* with no presumption of correctness. *State v. Guy William Rush* (citing *Smiley*, 38 S.W.3d at 521; *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn.1995)).

In *State v. Burns*, 6 S.W.3d 453, 465 (Tenn.1999), our supreme court adopted a modified version of the American Law Institute's Model Penal Code definition of lesser-included offenses. *See also State v. Guy William Rush*. Under the new test, an offense is a lesser-included offense if: [3]

(a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that **it contains a statutory element** or elements establishing:

(1) a different mental state indicating a lesser kind of culpability; and/or

(2) a **less serious harm or risk of harm** to the same person, property or public interest; or

(c) it consists of

(1) facilitation of the offense charged . . .; or

(2) an attempt to commit the offense charged . . .; or

(3) solicitation to commit the offense charged.

*Burns*, 6 S.W.3d at 466–67 (emphasis added).[4] *See also State v. Curtis Jason Ely*, 48 S.W.3d 710 (Tenn.2001).

Driving while intoxicated is defined in Section 55–10–401(a) of the Tennessee Code Annotated as follows:

It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or

---

driver's license. *See generally* Tenn.Code Ann. § 55–10–406.

**3.** We acknowledge that an offense may be statutorily designated a lesser-included offense by our legislature. *See State v. Guy William Rush* (citing *Burns*, 6 S.W.3d at n. 12); *see, e.g.*, Tenn.Code Ann. § 39–15–401(d) (Supp.1998) (designating child abuse or neglect as a lesser-included offense of any kind of homicide, statutory assault, or sexual of-

fense if the victim is a child and the evidence supports the charge); Tenn.Code Ann. § 55–10–415(c) (1998) (designating the offense of underage driving while impaired as a lesser-included offense of driving while intoxicated).

**4.** We note that the offense of driving while impaired is a completed offense and therefore analysis under part (c) of *Burns* is not required.

(2) The alcohol concentration in such person's blood or breath is ten-hundredths of one percent (.10%) or more.

Driving while impaired is defined in Section 55–10–418(a) of the Tennessee Code Annotated as follows:

A person twenty-one years (21) of age or older who drives or is in physical control of a motor vehicle while such person's ability to safely operate the vehicle is impaired as the proximate result of the consumption or ingestion of alcohol, drugs, any other intoxicant or any combination thereof commits the offense of adult driving while impaired.

Under part (a) of *Burns*, an offense is included if it is impossible to commit the charged offense without also committing the lesser. Accordingly, an offense is not a lesser-included offense of another if each crime requires a different element of proof. As defined by the statute, adult driving while impaired contains an element, "[a] person twenty-one years (21) of age or older," which is not included within the statutory elements of driving under the influence and as such fails part (a) of the *Burns* test. *See Burns*, 6 S.W.3d at 466–467.

■■■ Notwithstanding, an offense may nonetheless be included as a lesser offense of the charged offense if "[the offense] fails to meet the definition in part (a) only in the respect that it contains **a statutory element or elements establishing** ... a lesser kind of culpability ... or ... a less serious harm or risk of harm...." *Burns*,

6 S.W.3d at 466–67 (emphasis added); *see also State v. Curtis Jason Ely*. Our supreme court has noted that "the analysis under part (b) is more narrow than the corresponding analysis espoused by the Model Penal Code because the statutory elements in question remain the focus of the inquiry." *State v. Guy William Rush*. Thus, under part (b) of *Burns*, "an offense may still be a lesser-included offense despite having a different element **if the differing element** reflects a less serious harm or risk of harm or involves a differing mental state indicating a lesser kind of culpability." [5] *State v. Guy William Rush* (emphasis added); *see generally State v. Curtis Jason Ely*. We conclude that proof that the offender is "twenty-one years (21) of age or older" is not "a less serious harm or risk of harm to the same person, property or public interest" or "a differing mental state indicating a lesser kind of culpability" under part (b) of the *Burns* test. *Id*. Accordingly, we hold that the offense of adult driving while impaired is not a lesser-included offense of driving under the influence under the test pronounced in *Burns*. [6] *See Burns*, 6 S.W.3d at 466–467. Therefore, the trial court did not err by refusing to instruct the jury as to the offense of adult driving while impaired. This issue is without merit.

### III. Juror # 28

■■■ During voir dire, Prospective Juror # 28, Deborah Jones, stated that, in 1971, she was injured in an automobile accident as a result of the actions of a

---

5. The part (b) test of *Burns* is distinguished from the corresponding Model Penal Code test which also permits the finding of a lesser-included offense based upon a less serious injury or risk or a lesser kind of culpability. Under the *Burns* test, the lesser culpability or harm *must* pertain to the "differing element," whereas under the Model Penal Code approach, the lesser harm or culpability relates not to the element but to the offense in general. *Compare Burns*, 6 S.W.3d at 466–67 *with* Model Penal Code § 1.07(4).

6. We acknowledge that our legislature has specifically designated the offense of underage driving while impaired a lesser-included offense of driving under the influence. *See* Tenn.Code Ann. § 55–10–415(c).

drunk driver. Notwithstanding this incident, Ms. Jones stated that she could be fair and abide by her oath as a juror in the present case. Ms. Jones additionally revealed that she is a non-drinker and has financially contributed to Mothers Against Drunk Driving (M.A.D.D.). Again, she averred that her status as a victim of a drunk driver and a supporter of M.A.D.D. would not affect her ability to sit as a juror. She added that she did not believe it was *per se* illegal simply to drink and then to drive.

In chambers, Ms. Jones, was challenged by the Appellant for cause. Specifically, defense counsel noted that Ms. Jones was a victim of a drunk driving incident, she was a financial contributor to M.A.D.D. and she is a non-drinker. Counsel argued that these circumstances necessitate her removal for cause despite her assertions that she could be fair. The trial court, while acknowledging that the Appellant had exhausted all of his peremptory challenges, found that since Ms. Jones stated that she could be fair, there was no basis to sustain a challenge for cause.

 Article I, Section 9 of the Tennessee Constitution assures the accused in a criminal prosecution "the right, among other rights, to a speedy public trial ... [by] an impartial jury." "[T]he challenge for cause was designed to exclude from the jury [prospective jurors] whose bias or prejudice rendered them unfit...." *Manning v. State,* 155 Tenn. 266, 292 S.W. 451, 455 (1927). "The qualification of a juror is within the trial judge's discretion and his finding a juror to be qualified will not be disturbed on review except on the clear showing of an abuse of discretion." *Burns v. State,* 591 S.W.2d 780, 782 (Tenn.Crim. App.1979). Rule 24, Tennessee Rules of Criminal Procedure, provides in part:

Any party may challenge a prospective juror for cause if:

\* \* \*

(2) The prospective juror's exposure to potentially prejudicial information makes the person unacceptable as a juror.... A prospective juror who states that he or she will be unable to overcome preconceptions shall be subject to challenge for cause no matter how slight the exposure. If the prospective juror has seen or heard and remembers information that will be developed in the course of trial, or that may be inadmissible but is not so prejudicial as to create a substantial risk that his or her judgment will be affected, the prospective juror's acceptability shall depend on whether the testimony as to impartiality is believed. If the prospective juror admits to having formed an opinion, he or she shall be subject to challenge for cause unless the examination shows unequivocally that the prospective juror can be impartial.

In *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985), the United States Supreme Court delineated the following standard for determining whether a juror was properly excused for cause: "whether the juror's views would 'prevent or substantially impair the performance of his [or her] duties as a juror in accordance with his [or her] oath.'" The Supreme Court further observed that "this standard does not require that a juror's bias be proved with 'unmistakable clarity.'" *Id.* Finally, the Court noted that "deference must be paid to the trial judge who sees and hears the jurors." *Id.* at 426, 105 S.Ct. at 853.

 Although admitting that she had previously been a victim of a drunk driving incident and that she had made financial contributions to M.A.D.D., Ms. Jones did "unequivocally" assert that she could follow the law and be fair as a juror. Jurors

need not be totally ignorant of the facts or the subject matter of the case on which they sit. Even the formation of an opinion on the merits will not disqualify a juror if she can lay aside her opinion and render a verdict based on the evidence presented in court. *See State v. Sammons*, 656 S.W.2d 862, 869 (Tenn.Crim.App.1982) (citing *Brady v. State*, 584 S.W.2d 245, 249–50 (Tenn. Crim.App.1979); *Lackey v. State*, 578 S.W.2d 101, 103–04 (Tenn.Crim.App.1978)). Again, the decision of a trial court in excusing or not excusing a juror for cause is subject to an abuse of discretion standard. *State v. Kilburn*, 782 S.W.2d 199, 203 (Tenn.Crim.App.1989). Since Ms. Jones indicated that she could follow the law as applied to the present case, the trial court denied the Appellant's motion to exclude Ms. Jones for cause. After reviewing the record, we conclude that the trial court did not abuse its discretion in refusing to excuse Ms. Jones for cause.

### IV. Prosecutor's Opening Remarks

 During the State's opening remarks to the jury, the prosecutor made the following comments:

> You will conclude at the end of all the evidence that the defendant was not only guilty of driving under the influence, he was, in fact, driving drunk.

The Appellant objected upon grounds that it was not the jury's duty to find that the Appellant was driving drunk, but only that he was driving under the influence. The court overruled the objection. On appeal, the Appellant now contends that the prosecutor improperly misled the jury. Specifically, he asserts that "evidence that the Appellant was drunk, is irrelevant." Moreover, the Appellant asserts that the prosecutor's use of the term "drunk" was "confusing and misleading to the jury as to the State's burden of proof." He therefore contends that the verdict was rendered based upon an erroneous standard.

We do not find the prosecutor's statements to be either confusing or altering the State's burden of proof. The prosecutor was merely making reference to the Appellant's alleged heightened state of intoxication. Moreover, the trial court properly instructed the jury that they were to decide the case solely upon the evidence introduced at trial and the law as instructed and that the statements of counsel do not constitute evidence. This issue is without merit.

### V. State's Improper Cross-Examination of Appellant

During cross-examination of the Appellant, the prosecutor posed the following question: Did you make any attempt to go back and see if there was some kind of neutral objective observer that you could bring into court?

The Appellant objected, but was overruled by the trial court. The prosecutor then inquired:

> And it would also be fair to say that you knew in advance that if a jury were looking at testimony, that they would give more weight to testimony of an objective observer, someone that maybe wasn't friends with you, someone that maybe wasn't even drinking, than a person that was your friend and that had been drinking.

The Appellant now takes issue with the prosecutor's cross-examination of the Appellant, contending that the prosecutor's questions were argumentative, suggestive, and therefore, improper.

 The right to cross-examination is fundamental. *State v. Hill*, 598 S.W.2d 815, 819 (Tenn.Crim.App.1980). Notwithstanding, the propriety, scope, manner and control of testimony and other evidence,

including the scope of cross-examination, is within the sound discretion of the trial court, which will not be reversed absent an abuse of that discretion. *See State v. Hutchison,* 898 S.W.2d 161, 172 (Tenn. 1994), *cert. denied,* 516 U.S. 846, 116 S.Ct. 137, 133 L.Ed.2d 84 (1995); *State v. Barnard,* 899 S.W.2d 617, 624 (Tenn.Crim. App.), *perm. to appeal denied,* (Tenn.1994) (citing *State v. Banks,* 564 S.W.2d 947, 949 (Tenn.1978)); *see also* Tenn. R. Evid. 611. Absent a clear abuse, which has resulted in manifest prejudice to the accused, this court will not interfere with the trial court's exercise of its discretion in matters pertaining to the examination of witnesses. *Coffee v. State,* 188 Tenn. 1, 216 S.W.2d 702 (1948); *State v. Johnson,* 670 S.W.2d 634 (Tenn.Crim.App.1984). Indeed, in addressing the propriety of the prosecutor's cross-examination of the Appellant, the question is not whether the assistant district attorney general's conduct constituted a desirable level of conduct for the prosecutorial profession or lawyers in general but of what effect it had upon the trial. The prosecutor's comments did not interject inadmissible issues or material into the trial. We conclude that the trial court did not abuse its discretion nor did the prosecutor's conduct affect the verdict. This issue is without merit.

## VI. Prosecutorial Misconduct During Closing Argument

██ During closing argument, the prosecutor commented that people who drive with a blood alcohol content of .28% have built up a tolerance to alcohol. The Appellant objected to this statement; the trial court sustained the objection. The prosecutor then argued:

> The defendant says he doesn't drink often. We can't prove that one way or another. There is no proof in the record that, other than maybe his appearance. You all have to make your own assess-

ment as to whether or not he's got a drinking problem.

The Appellant moved for a mistrial based upon these statements. The court denied the motion, but granted a curative instruction and cautioned the prosecutor that his statement was improper, unfair, unprofessional and that the prosecutor "should know it." Notwithstanding the curative instruction by the trial court, the Appellant alleges on appeal that "the prosecutor intentionally presented improper evidence and a mistrial should have been granted."

██ The decision of whether to grant a mistrial is within the sound discretion of the trial court. *See State v. McKinney,* 929 S.W.2d 404, 405 (Tenn. Crim.App.1996). "Generally, a mistrial will be declared in a criminal case only when there is a 'manifest necessity' requiring such action by the trial judge." *State v. Millbrooks,* 819 S.W.2d 441, 443 (Tenn. Crim.App.1991). In reviewing a trial court's denial of a motion for mistrial, this court will not disturb that decision unless there is an abuse of discretion. *State v. Adkins,* 786 S.W.2d 642, 644 (Tenn.1990); *State v. Williams,* 929 S.W.2d 385, 388 (Tenn.Crim.App.1996).

██ Closing argument is a valuable tool for the parties during the trial process. Consequently, the attorneys are usually given wide latitude in the scope of their arguments, *see State v. Bigbee,* 885 S.W.2d 797, 809 (Tenn.1994), and trial judges in turn are accorded wide discretion in their control of those arguments, *see State v. Zirkle,* 910 S.W.2d 874, 888 (Tenn.Crim.App.1995). This discretion will not be interfered with on appeal in the absence of abuse thereof. *Smith v. State,* 527 S.W.2d 737, 739 (Tenn.1975). To succeed on a claim of prosecutorial misconduct, the defendant must show that the argument was so inflammatory or the con-

duct so improper that it affected the verdict to his or her detriment. *Harrington,* 385 S.W.2d at 759.

■ In the present case, the Appellant has shown no manifest necessity that would require a mistrial. Considering the curative instruction offered by the court, we cannot conclude that the information was so prejudicial that a mistrial should have been granted. In measuring the prejudicial impact of any misconduct of the prosecutor in asking the question, this court should consider the facts and circumstances of the case; any curative measures undertaken by the court and the prosecutor; the intent of the prosecutor; the cumulative effect of the improper conduct and any other errors; and the relative strength or weakness of the case. *Judge,* 539 S.W.2d at 344; *see also Buck,* 670 S.W.2d at 609. In the present case, the State's proof, including the videotape evidence of the Appellant's arrest, was overwhelming as to the Appellant's guilt of the offense of driving under the influence. The prosecutor's comment was slight considering the context of the closing argument. The trial court provided the jury with an instruction that they were to disregard the prosecutor's comments regarding the Appellant's appearance. We presume that the jury followed the trial court's explicit instruction not to consider the inappropriate argument. *See State v. Smith,* 893 S.W.2d 908, 923 (Tenn.1994), *cert. denied,* 516 U.S. 829, 116 S.Ct. 99, 133 L.Ed.2d 53 (1995). Under these circumstances, we hold that the trial court did not abuse its discretion when it denied the motion for a mistrial. The record does not support a conclusion that a miscarriage of justice occurred by continuing the trial after the prosecutor's improper questions. *See State v. McPherson,* 882 S.W.2d 365, 370 (Tenn.Crim.App.1994). This issue has no merit.

## VII. Sentencing

■ A sentencing hearing was conducted by the trial court on November 13, 2000. No proof was presented by either the State or the Appellant, rather both parties relied upon argument of counsel. The trial court entered the following findings of fact and conclusions of law:

> The thing that strikes me most about this case is the level of intoxication of Mr. Humphreys. And I did see the tape. He registered .28 and the tape substantiated that in that he appeared to be highly intoxicated when the officer stopped him. And he is an intelligent man and [he] should know that he is a danger not only to himself but to others when he drives in that condition. The other thing that strikes me about this case ... is that someone that registers a .28 cannot do so unless they do have a drinking problem. You do have to be a habitual drinker to still be conscious at .28. And I think that may be the case in this situation....

> The sentence that the court will impose because of the level of the blood alcohol is 11 months 29 days in the Williamson County Workhouse I will suspend that sentence and place Mr. Humphreys on 11 months 29 days supervised probation conditioned on him serving 15 days, day for day....

> I have the authority under Rules of Criminal Procedure to modify this order. I think I have to make him serve 7 days, day for day ... but I would consider suspending the 8 of the other days that I have imposed but what I want to see if he wants to pursue that is some kind of inpatient treatment and I want to see a specific program so that suspension can be conditioned on that.

The Appellant now contests the sentence imposed by the trial court, arguing that

the court failed to make any findings on the record for enhancing the Appellant's sentence from the statutory minimum of seven days to fifteen days. Additionally, he argues that the court's imposition of an additional eight days based upon the court's conclusion that the Appellant is a "habitual drunk" violates his constitutional protections against double jeopardy.

This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn.Code Ann. § 40–35–401(d) (1997). The appealing party bears the burden of establishing that the sentence imposed by the trial court is improper. Sentencing Commission Comments, Tenn.Code Ann. § 40–35–401.

The Appellant was found guilty of driving under the influence, first offense, a class A misdemeanor. *See* Tenn.Code Ann. § 55–10–401 and § 55–10–403(m) (1998). In misdemeanor sentencing, a separate sentencing hearing is not mandatory but the trial court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of service of the sentence. Tenn.Code Ann. § 40–35–302(a) (1997). Misdemeanor sentencing is controlled by Tenn.Code Ann. § 40–35–302, which provides in part that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. *State v. Palmer*, 902 S.W.2d 391, 394 (Tenn.1995). Misdemeanor sentencing is designed to provide the trial court with continuing jurisdiction. *State v. Baker*, 966 S.W.2d 429, 434 (Tenn.Crim.App.1997). Furthermore, the trial court has more flexibility in misdemeanor sentencing than in felony sentencing. *State v. Troutman*, 979 S.W.2d 271, 273 (Tenn.1998).

Our legislature has provided that a defendant convicted of first offense DUI "shall be confined ... for not less than forty-eight hours nor more than eleven months and twenty-nine days." Tenn. Code Ann. § 55–10–403(a)(1). However, the minimum period of confinement for a defendant, convicted of DUI first offense, having, at the time of the offense, a blood alcohol content of twenty hundredths of one percent (.20%) or more shall be seven consecutive calendar days rather than forty-eight (48) hours. Tenn.Code Ann. § 55–10–403(a)(1). Furthermore, "all persons sentenced under subsection (a) shall, in addition to the service of at least the minimum sentence, be required to serve the difference between the time actually served and the maximum sentence on probation." Tenn.Code Ann. § 55–10–403(c). Thus, the length of a defendant's sentence for a first offense DUI is eleven months, twenty nine days. *See generally Troutman*, 979 S.W.2d at 273. In effect, the DUI statute mandates a maximum sentence for a DUI conviction with the only function of the trial court being to determine what period above the minimum period of incarceration established by statute, if any, is to be suspended. *See Troutman*, 979 S.W.2d at 273; *State v. Combs*, 945 S.W.2d 770, 774 (Tenn.Crim.App.1996), *perm. to appeal denied*, (Tenn.1997). Thus, the trial court's imposition of a sentence of eleven months, twenty-nine days is mandated by our legislature and is not improper.

The trial court retains the authority to place the defendant on probation either immediately or after a term of periodic or continuous confinement. Tenn.Code Ann. § 40–35–302(e). The statutory scheme is designed to provide the trial court with continuing jurisdiction in the misdemeanor case and a wide latitude of flexibility. Thus, we are confronted with the question of whether a sentence of fifteen days confinement is justified in this case.

 Although otherwise entitled to the same considerations under the Sentencing Reform Act as a felon, the misdemeanor offender is not entitled to the presumption of a minimum sentence. *See State v. Seaton*, 914 S.W.2d 129, 133 (Tenn. Crim.App.1995) (citation omitted). Additionally, a misdemeanor sentence, as opposed to a felony sentence, contains no sentence range. Moreover, despite the Appellant's assertion, the trial court was not required to make explicit findings on the record as a sentencing hearing is not mandatory. *See* Tenn.Code Ann. § 40–35–302. Accordingly, in misdemeanor cases, the trial judge, who is able to observe first-hand the demeanor and responses of the defendant while testifying must be granted discretion in arriving at the appropriate sentence. In sum, the sentencing court should examine the misdemeanor offense in the light and character of the circumstances of the offense as well as under the mandated sentencing principles. *See State v. Gilboy*, 857 S.W.2d 884, 889 (Tenn.Crim. App.1993). The record in this case reflects that the trial court increased the minimum term of confinement from seven days to fifteen days based upon the Appellant's heightened degree of intoxication at the time of his arrest and upon concerns that the Appellant may be a habitual drinker. These factors which are indicators of an offender's likelihood to re-offend are appropriate sentencing considerations. Section 55–10–403(a)(1) provides for a minimum seven day sentence for DUI offenders having a blood alcohol content greater than .20 percent. A seven day sentence is the *minimum* sentence to be imposed and the sentencing court may properly increase the sentence where supported by the record. We are not persuaded that the trial court exceeded the "wide latitude of flexibility," *State v. Creasy*, 885 S.W.2d 829, 832 (Tenn.Crim.App.1994), that is afforded in misdemeanor sentencing, and we will not disturb the order requiring fifteen days confinement.

 Finally, we reject the Appellant's argument that the sentencing court's consideration of the degree of the Appellant's intoxication violated protections against double jeopardy. The United States and Tennessee Constitutions protect the accused from being twice placed in jeopardy for the same offense. U.S. CONST. amend. V; TENN. CONST. Art. I, Sec. 10. As our supreme court has stated on numerous occasions, three fundamental principles underlie the constitutional protections against double jeopardy: (1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for the same offense. *See State v. Lewis*, 958 S.W.2d 736, 738 (Tenn.1997); *State v. Denton*, 938 S.W.2d 373, 378 (Tenn.1996) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)). The Appellant received only one conviction and one sentence for his criminal act. We do not find the constitutional protections against double jeopardy invoked. This issue is without merit.

Following review of the record and the applicable law, we affirm the judgment of conviction and the sentence imposed by the trial court.