# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 25, 2010

## STATE OF TENNESSEE v. JIMMY DANIEL PRATER

### Appeal from the Circuit Court for Wayne County
### No. 14404    Jim T. Hamilton, Judge

---

### No. M2009-00527-CCA-R3-CD - Filed November 16, 2010

---

A Wayne County jury acquitted the Defendant, Jimmy Daniel Prater, of driving under the influence and mitigated criminal littering, but it found that the Defendant violated the implied consent law and violated the open container law. On appeal, the Defendant challenges the sufficiency of the evidence supporting his conviction for violation of the implied consent law. After a review of the record, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

DAVID H. WELLES, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Ryan P. Durham, Lawrenceburg, Tennessee, for the appellant, Jimmy Daniel Prater.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Mike Bottoms, District Attorney General; and Doug Dicus, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

This case arises from a one-vehicle traffic accident involving the Defendant, which resulted in charges by a Wayne County grand jury of driving under the influence (DUI), violation of the implied consent law, violation of the open container law, and mitigated criminal littering. See Tenn. Code Ann. §§ 39-14-503 & 55-10-401, -406, -416. At the Defendant's trial on these charges, Phillip Taylor Long, a trooper with the Tennessee Highway Patrol, testified that, on November 3, 2007, he was called to the scene of an accident "with no injuries" on Hog Creek Road. When Trooper Long arrived, the Defendant

was already talking with Deputy Cody Mace of the Wayne County Sheriff's Department. Based upon his observations of the scene, Trooper Long said it appeared that the Defendant had been traveling south on Hog Creek Road, "and it looked like he just veered off the road into trees, knocking over one and causing one or two more to fall over also." According to Trooper Long, the accident occurred around 12:36 a.m.

The activities at the scene were video-recorded by the camera in Trooper Long's vehicle, and the audio was recorded by a "mic clip" on Trooper Long's tie. The tape was played for the jury, and Trooper Long narrated the events.

Trooper Long proceeded to the Defendant's vehicle to get the vehicle identification number and tag information for the accident report. When he got to the vehicle, the door was open, and he smelled "a strong smell of alcohol" coming from the vehicle. He looked through the windows of the vehicle and saw a beer can in the back seat "with a little left in it." He also observed three more beer cans approximately ten to twenty feet from the vehicle "off in the woods." The brand of the beer cans in the woods, Bud Light, was the same brand as the beer can found inside the Defendant's vehicle. Trooper Long described the beer cans he saw in the woods: "[T]hey didn't have any debris, they weren't rusted. They looked like you just bought them except they were empty."

Trooper Long administered several field sobriety tests, most of which, in the opinion of Trooper Long, the Defendant failed. During the instruction phase of the "walk and turn" test, the Defendant lost his balance. After Trooper Long finished explaining the test, he asked the Defendant if he understood, and the Defendant did not respond, but "just took off doing it." Trooper Long explained why the Defendant performed poorly on the test: (1) The Defendant did not "have his feet completely together when he touched heel to toe."; (2) After taking his first nine steps and attempting to turn, the Defendant "had to ask which foot he should have been on. . . . He couldn't remember what [Trooper Long had] instructed him to do."; (3) The Defendant lost his balance while attempting to turn; and (4) As the Defendant attempts to walk back, he loses his balance again, "he misses . . . twice . . . , and he uses his arm for balance . . . ."

After the Defendant was arrested, he was placed in the back of Trooper Long's patrol car and transported to the Wayne County Jail. Trooper Long testified that he presented the Defendant with the implied consent form and read from it verbatim, including the portion stating the consequences of refusing to submit to the test. The Defendant refused to take the test and signed the form accordingly.

On cross-examination, defense counsel again reviewed the videotape with Trooper Long. Trooper Long agreed that he did not see the Defendant driving the vehicle, as "it was

sitting on one of the trees [the Defendant] ran over" on a small embankment. In addition to Deputy Mace who was already present on the scene, Trooper Nutt[1] also arrived as Trooper Long was arriving. Trooper Long agreed that, when he arrived at the accident scene, the Defendant was outside his car, walking around.

After the Defendant brought Trooper Long his driver's license, Trooper Long went to examine the Defendant's vehicle. He said that the beer can in the back seat was on the floor board and was almost empty. Trooper Long agreed that it was possible that the beer cans got there some other way than the Defendant, but stated, "It would be hard to toss a beer can that far off the road with the debris, the trees, and the saplings as thick as it is . . . ."

Trooper Long asked the Defendant if he had been drinking, and the Defendant said that he had not. At this point, Trooper Long noticed that the Defendant's speech was slurred, and he had decided to cite the Defendant for littering, reckless driving, an open container violation, and a seat belt violation. Trooper Long admitted that he never saw whether the Defendant was wearing his seat belt; however, he believed the Defendant was not wearing his seat belt because "most of the time" the seat belt would be "locked," and it was not.

Trooper Long testified about the training in administering field sobriety tests and the standards involved. He acknowledged that there was no line for the Defendant to walk on while performing the "walk and turn test." According to Trooper Long, the camera was not well-aimed to show each time the Defendant missed a heel to toe touch.

In addition to the "walk and turn" test, Trooper Long also asked the Defendant to perform the "the finger-to-nose" test and "one-leg stand " test. Regarding the "finger-to-nose" test, Trooper Long explained what he meant when he noted on his report that the Defendant "completely missed" with his right hand: "where you basically miss your whole face, and he missed the tip of his nose." Trooper Long did not believe one could see the "miss" on the videotape. Trooper Long also noted swaying as a reason he failed the Defendant on "the finger-to-nose" test. As for the "one-leg stand" test, Trooper Long stated that the Defendant "put his foot down before time, raised his hands, and had to be told to restart." Trooper Long admitted that his arrest report and DUI report differed as to the exact time the Defendant erred during the "one-leg stand" test.

After his poor performance on the field sobriety tests, Trooper Long asked the Defendant to submit to the blood alcohol test. The Defendant refused. The Defendant was then placed under arrest. Trooper Long confirmed that the law requires an officer to have

---

[1] We are unable to discern Trooper Nutt's first name from the record on appeal.

reasonable grounds to believe an individual is intoxicated before requesting a blood test. Trooper Long agreed that the Defendant was very polite during the entire process.

Based upon this evidence, the jury found the Defendant guilty of violating the implied consent law and of violating the open container law, but found him not guilty of DUI and mitigated criminal littering. For violating the implied consent law, the trial court revoked the Defendant's driver's license for a period of one year. The trial court imposed a sentence of thirty days, suspended, in the Wayne County Jail and ordered a $50 fine for the open container conviction. This appeal followed.

## Analysis

The Defendant contends that the evidence presented at trial is insufficient to support the jury's finding of a violation of the implied consent law. Specifically, the Defendant contends that he was not under "arrest" when asked to take the blood test as required by statute and that the evidence was necessarily insufficient to support the "reasonable grounds" element of implied consent. The State disagrees, contending that the evidence is sufficient.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor

-4-

will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

The implied consent law provides, in relevant part, as follows:

(a)(1) Any person who drives a motor vehicle in this state is deemed to have given consent to a test or tests for the purpose of determining the alcoholic content of that person's blood, a test or tests for the purpose of determining the drug content of the person's blood, or both tests. However, no such test or tests may be administered pursuant to this section, unless conducted at the direction of a law enforcement officer having reasonable grounds to believe the person was driving while under the influence of alcohol, a drug, any other intoxicant or any combination of alcohol, drugs, or other intoxicants as prohibited by § 55-10-401, . . .

. . . .

(3) Any law enforcement officer who requests that the driver of a motor vehicle submit to either or both tests authorized pursuant to this section, for the purpose of determining the alcohol or drug content, or both, of the driver's blood, shall, prior to conducting either test or tests, advise the driver that refusal to submit to the test or tests will result in the suspension by the court of the driver's operator's license . . . ,

(4)(A) If such person, having been placed under arrest and then having been requested by a law enforcement officer to submit to either or both tests, and having been advised of the consequences for refusing to do so, refuses to submit, the test or tests to which the person refused shall not be given, and the person shall be charged with violating this subsection (a). . . .

Tenn. Code Ann. § 55-10-406. With certain exceptions,[2] violating the implied consent statute is not a crime but a civil wrong: "If the court finds that the driver violated [the provisions of the implied consent statute], . . . the driver shall not be considered as having

_____

[2] We note that a violation of the implied consent law may result in criminal penalties if the defendant is driving on a license that is cancelled, suspended, or revoked for certain prior convictions. See Tenn. Code. Ann. § 55-10-406(a)(3).

committed a criminal offense; however, the court shall revoke the license of such driver . . . ." Tenn. Code Ann. § 55-10-406(4)(A).

In this case, to support a conviction for violation of the implied consent law, the State must have proven the existence of the following essential elements: (1) that the defendant had been driving a motor vehicle in this state; (2) that the defendant had been placed under arrest and had been requested by a law enforcement officer to submit to a test for the purpose of determining the alcohol and/or drug content of his blood; (3) that the defendant had been advised that refusal to submit to the test or tests will result in the suspension by the court of the driver's operator's license; and (4) that the defendant refused to submit to such test or tests. See Tennessee Pattern Jury Instructions-Criminal § 38.17 (defining the criminal offense of refusal to submit to a test while driving on cancelled, suspended, or revoked license).

First, the Defendant argues that he was not under "arrest" prior to Trooper Long's request for him to submit to a blood alcohol test and, therefore, Trooper Long did not follow the requirement of subsection (4)(A) (" If such person, having been placed under arrest and then having been requested by a law enforcement officer to submit to either or both tests . . ."). However, when the Defendant was asked to submit to a blood alcohol test, Trooper Long believed the Defendant to be intoxicated. It may be inferred that the Defendant was under Trooper Long's control and was not free leave. See State v. Evetts, 670 S.W.2d 640, 642 (Tenn. Crim. App. 1984). The Defendant was under "arrest" at that time. See id.; see also State v. Nidiffer, 173 S.W.3d 62, 66 (Tenn. Crim. App. 2004). Moreover, a formal arrest at the scene took place immediately following Trooper Long's request for testing. The Defendant was then transported to the county jail for booking, read the implied consent form, and again refused to take the test. The evidence was sufficient for a jury to find that the Defendant was under "arrest" at the time he was asked to submit to testing.

The Defendant next argues that jury did not have sufficient evidence upon which to conclude that Trooper Long had reasonable grounds to believe that the Defendant was intoxicated. While no definition of "reasonable grounds" is provided in the statute, the term has been used interchangeably with "probable cause" by the courts of this state. State v. Bowery, 189 S.W.3d 240, 248 (Tenn. Cirm. App. 1984) (citing State v. Melson, 638 S.W.2d 342, 350 (Tenn. 1982); State v. Humphreys, 70 S.W.3d 752, 761 (Tenn. Crim. App. 2001)). This Court has previously determined that factors such as the smell of alcohol, unsteady gait, bloodshot eyes, slurred speech, and unsuccessful performance of field sobriety tests constitute probable cause to request blood alcohol testing. Id. (citations omitted).

First, we note that "reasonable grounds" is not an element of the offense for the jury to consider, and that the Defendant did not raise this issue in the trial court. See Tenn. R.

App. P. 36(a). Nonetheless, we conclude that reasonable grounds existed for Trooper Long to request a blood alcohol test. In this case, the Defendant was the driver in a one-vehicle accident. Upon examining the Defendant's vehicle, Trooper Long testified that he smelled alcohol and that he then noticed that the Defendant's speech was slurred. Trooper Long had the Defendant perform several field sobriety tests, which, in Trooper Long's opinion, the Defendant failed. The Defendant's slurred speech, his poor performance on the field sobriety tests, the odor of alcohol, the empty beer cans found in and around the Defendant's vehicle satisfactorily formed the factual bases for Trooper Long's inference that a blood test was likely to reveal evidence of driving under the influence.

The videotape and implied consent form confirmed that Trooper Long both requested a blood alcohol test and advised the Defendant of the consequences of refusal. There is no disagreement that the Defendant refused to submit to the blood alcohol test. This evidence sufficiently supports the jury's finding that the Defendant violated the implied consent law.

## Conclusion

Based upon the foregoing, we conclude that the evidence is sufficient to support the Defendant's conviction for violation of the implied consent law. The judgments are affirmed.

_____
DAVID H. WELLES, JUDGE