# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 18, 2001

## STATE OF TENNESSEE v. PHILIP R. HAVEN

**Direct Appeal from the Criminal Court for Williamson County**
**No. II-156-700     Timothy L. Easter, Judge**

---

### No. M2001-00332-CCA-R3-CD - Filed July 18, 2002

---

A Williamson County grand jury indicted the defendant on alternative counts of driving under the influence of an intoxicant and of driving with a .10%[1] or more alcohol concentration in his blood or breath. At the conclusion of the proof, the trial jury convicted the defendant of the latter offense and assessed a fifteen hundred dollar fine. At sentencing, the trial court approved the fine assessed and further sentenced the defendant to six months to be suspended after the service of thirty days, day for day. Additionally, the court placed the defendant on supervised probation for eleven months and twenty-nine days during which time, among other conditions, the defendant was to complete alcohol safety school. Subsequently, the defendant filed a motion for a new trial or judgment of acquittal, which the trial court denied. Through this appeal the defendant contends that the trial court erred in 1) not excusing four jurors for cause; 2) permitting the prosecutor to make ingratiating statements to the jury during <u>voir</u> <u>dire</u>; 3) overruling counsel's objection to the prosecutor's comment in opening statement that the defendant was "drunk, way too drunk to drive"; 4) finding that the involved forensic scientist for the Tennessee Bureau of Investigation was the custodian of the alcohol report, thereby allowing the admission of the report into evidence; 5) concluding that "adult driving while impaired" was not a lesser included offense of driving under the influence; 6) refusing to dismiss count two of the indictment as a nullity; and 7) sentencing the defendant to more than the seven-consecutive-day minimum sentence applicable here. After reviewing each of these assertions, we find that none merit relief and, therefore, affirm the defendant's conviction and sentence. However, in reviewing the case, we have observed an error in the judgment form and, therefore, remand the matter for entry of a corrected judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed and Remanded.**

JERRY L. SMITH, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID G. HAYES, J., joined.

---

[1] The language used in this count did contain a variation as to percentage which will be addressed by one of the issues raised herein.

Lee Offman, Franklin, Tennessee, for appellant, Philip R. Haven.

Paul G. Summers, Attorney General & Reporter; Thomas E. Williams, III, Assistant Attorney General; Ron Davis, District Attorney General; and Lee Dryer, Assistant District Attorney General, for appellee, State of Tennessee.

## OPINION

### Factual Background

Since the defendant understandably does not challenge the sufficiency of the evidence, we will only briefly address the supporting proof here. Essentially, the record reflects that a vehicle driven by the defendant rammed a Ford Explorer in the parking lot of an O'Charley's restaurant in Franklin, Tennessee, after twice bumping the Explorer. Thereafter, the defendant refused to stop for the restaurant's general manager, causing the manager to move out of the path of the car as it left the lot. Officer Scott Legieza responded to the area and observed the defendant driving slowly with two flat tires, front end damage, and a hanging light fixture. When stopped, the defendant could not release himself from the seatbelt; was unsteady on his feet; had bloodshot eyes, an odor of alcohol about him, and slurred speech; performed poorly on three field sobriety tests; admitted to drinking one vodka drink approximately three hours earlier; denied being in an accident; etc. Subsequent testing revealed that the defendant had .22 grams percent of ethyl alcohol present in his bloodstream.

Upon hearing this and additional proof, the jury convicted the defendant of driving with an alcohol concentration of .10 percent or more in his blood. In this appeal the defendant raises the aforementioned seven challenges to this conviction and the sentence imposed by the trial court.

### Alleged Failure to Remove Prospective Jurors For Cause

Through his first issue the defendant asserts that the trial court erred in refusing to remove for cause the following prospective jurors: James Hayes, Eileen Kelly, and Phil Roach. In addition, he appears to allege that a juror named Pattie Burns should have also been excused for cause.

In analyzing this issue, we begin by observing the language of Tennessee Rule of Criminal Procedure 24(b). This provision states as follows:

> If the trial judge, after examination of any juror, is of the opinion that grounds for challenge for cause are present, the judge shall excuse that juror from the trial of the case. After the trial judge has tentatively determined that the jury meets the prescribed qualifications, adversary counsel may conduct further examination and challenges for cause may be exercised alternately by counsel for the respective parties. Any party may challenge a prospective juror for cause if:
>
> (1) there exists any ground for challenge for cause provided by law; or
>
> (2) the prospective juror's exposure to potentially prejudicial information makes the person unacceptable as a juror. Both the degree of exposure and the prospective juror's

-2-

testimony as to his or her state of mind shall be considered in determining acceptability. A prospective juror who states that he or she will be unable to overcome preconceptions shall be subject to challenge for cause no matter how slight the exposure. If the prospective juror has seen or heard and remembers information that will be developed in the course of trial, or that may be inadmissible but is not so prejudicial as to create a substantial risk that his or her judgment will be affected, the prospective juror's acceptability shall depend on whether the testimony as to impartiality is believed. If the prospective juror admits to having formed an opinion, he or she shall be subject to challenge for cause unless the examination shows unequivocally that the prospective juror can be impartial.

Tenn. R. Crim. P. 24(b). Additionally we note that "[a] trial court has wide discretion in ruling on the qualifications of a juror" and that "[t]his Court will not overturn such decisions absent a showing of an abuse of that discretion." State v. Kilburn, 782 S.W.2d 199, 203 (Tenn. Crim. App. 1989). Defendants disagreeing with a trial court's refusal to remove a juror for cause must exhaust their peremptory challenges in order to allege that the denial deprived them of a fair trial. See State v. Howell, 868 S.W.2d 238, 248 (Tenn. 1993); Cooper v. State, 847 S.W.2d 521, 535 (Tenn. Crim. App. 1992). Moreover, "any error in this regard is harmless unless the jury [that] heard the case was not fair and impartial," meaning that the trial court's refusal must have resulted in an incompetent juror's being forced upon the respective defendant. Howell, 868 S.W.2d at 248.

In the instant case the record reflects that the defendant did exhaust his peremptory challenges. Two of these were used to remove Hayes and Kelly from serving on the jury. In a sidebar conference defense counsel later requested that the trial court excuse Roach and Burns for cause, but the court overruled the request. Furthermore, the defendant's jury challenge sheet, which has been made a part of the technical record, reflects that he would have removed Roach and Burns if he had any peremptories remaining when they reached the panel.

From the above it is clear that neither Hayes nor Kelly served on the jury. As such, any error in refusing to remove them for cause would be harmless unless the proof shows that the jury trying the case was not fair and impartial. See, e.g., id. at 249; Kilburn, 782 S.W.2d at 202. Thus, we begin our inquiry by focusing on Roach and Burns.

During voir dire both of these jurors offered responses or comments that raised concerns for the defense. For example, Roach related that he had been on a trip with some young people when a drunk driver struck the vehicle in which he was traveling, killing one of the children.[2] From the record it appears that this incident took place approximately two years before the trial. Because of this experience the defense asked Roach about his ability to be fair, and Roach responded that he thought he could be. Immediately thereafter, the defense asked, "You can?" and received an affirmative reply. Earlier, the trial court asked if Roach would "be able to follow [the court's] instructions . . . regarding being able to separate" himself from the tragedy he had experienced. Roach replied, "Yes, sir." On another occasion the trial court asked Roach whether he could be fair and impartial in trying this case. Though the record provides no visible or audible response from

---

[2] He was not the father of the child who died.

this individual,[3] the trial court indicated that Roach had replied affirmatively. Neither the defendant nor the prosecution contested this interpretation.

Turning to Burns, this individual noted that she had dealt with the prosecutor in this case on separate cases through her employment in Kroger's loss prevention department. She also acknowledged that she still worked in this capacity with shoplifting offenses. However, on multiple occasions and though faced with fairly stringent questioning, she asserted that she could fairly and impartially determine the defendant's guilt or innocence.

As above-noted, the defendant challenged both of these jurors for cause. Counsel argued that Roach could not be fair and impartial in view of his experiences combined with the fact that this case involved vehicular damage and alcohol. Counsel further asserted that Burns could not validly serve because of her prior and continuing professional contacts with the district attorney's office and this prosecutor. In overruling this request, the trial court stated that both Roach and Burns had "indicated [that] they [could] be fair and impartial and [that] the court [was] satisfied that they [were] being honest and truthful."

From our review of the record, we find no showing that the trial court abused its discretion in so ruling. We, therefore, also determine that no reversible error occurred with respect to Hayes and Kelly since the proof does not demonstrate that the jury trying the defendant was unfair or impartial. This issue as a whole merits no relief.


### The Prosecutor's "Wrongfully Ingratiating Himself with" Prospective Jurors During *Voir Dire*

The defendant next avers that the trial court improperly overruled defense counsel's objection to comments made by the prosecution during voir dire. More specifically, the defendant alleges that the prosecutor "wrongfully ingratiat[ed] himself with" prospective jurors by commenting to a Georgia Tech graduate that this potential juror's alma mater was a good school and essentially mentioning to another member of the venire who was a former Connecticut resident that he (the prosecutor) had been born in that state.

To support his argument, the defendant provides this Court with no controlling federal or Tennessee precedent. Instead he cites Pressley v. State, for the proposition that error occurs when a prosecutor becomes "inappropriately familiar with" a potential juror. Pressley v. State, 770 So. 2d 115, 122 (Ala. Crim. App. 1999). After reviewing Pressley, we observe that the alleged impropriety there did not involve questions asked of the venire but rather the proximity of the prosecutors to potential jurors based on the physical arrangement of the room. Id. at 122-23. We further note that the Alabama Court of Criminal Appeals found no error in the record before it. Id. at 123.

In response to the defendant's claim, the State cites State v. Irick for the proposition that this Court will not disturb a trial court's decision regarding the conduct of voir dire absent a showing that

---

[3] While this record provides sufficient information to decide the issue presented, we wish to express concern with the manner in which the voir dire proceedings were preserved, lest such may not be true of a future challenge. On numerous occasions the potential jurors' nods or shakes of heads were apparently not recorded in any manner. In addition, multiple responses of the venire members are difficult to clearly discern.

the trial court abused its discretion regarding the contested act. See State v. Irick, 762 S.W.2d 121, 125 (Tenn. 1988). The State then avers that "[t]he defendant has failed to show how the court abused its discretion in overruling the defendant's objections to a couple of pleasantries or asides by counsel during voir dire."

We essentially agree with the latter analysis.[4] During voir dire members of the venire are frequently asked to provide personal and revealing responses to questions asked of them by the court and the attorneys. It, therefore, makes sense that the questioning parties would want to aid the jurors in feeling more at ease during this process. Defense counsel appears aware of this also as the record reveals somewhat similar comments made by him to potential jurors. In any event, even if the comments had constituted error, any such error was harmless in view of the strength of the convicting proof. This issue affords the defendant no relief. See Tenn. R. Crim. P. 52(a).


### The Prosecution's Drunkeness Comment During Opening Statement

In his third issue the defendant contends that the trial court erred by overruling his objection to a portion of the prosecution's argument. This objection had related to the prosecutor's concluding comment that "[a]t the end of all the evidence you will not only conclude that the defendant was under the influence, but that he was, in fact, drunk; way too drunk to drive."

At trial the defendant objected saying, "I'm going to object to that. That's not what they have to prove or have to find. Uh, that's not the criteria." Through his brief he argues that the statement was irrelevant, made in bad faith, "improper, misleading, confusing, and argumentative."

Since the filing of the present appeal, this Court has decided State v. Humphreys. See State v. Humphreys, 70 S.W.3d 752 (Tenn. Crim. App. 2001). Therein this Court provided as follows:

> During the State's opening remarks to the jury, the prosecutor made the following comments:
>
> ["]You will conclude at the end of all the evidence that the defendant was not only guilty of driving under the influence, he was, in fact, driving drunk.["]
>
> The Appellant objected upon grounds that it was not the jury's duty to find that the Appellant was driving drunk, but only that he was driving under the influence. The court overruled the objection. On appeal, the Appellant now contends that the prosecutor improperly misled the jury. Specifically, he asserts that "evidence that the Appellant was drunk, is irrelevant." Moreover, the Appellant asserts that the prosecutor's use of the term "drunk" was "confusing and misleading to the jury as to the State's burden of proof." He therefore contends that the verdict was rendered based upon an erroneous standard.

---

[4] Our review of the record does not reveal that defense counsel made a contemporaneous objection to the second contested comment. He, thus, waived this portion of the issue. See Tenn. R. App. P. 36(a).

We do not find the prosecutor's statements to be either confusing or altering the State's burden of proof. The prosecutor was merely making reference to the Appellant's alleged heightened state of intoxication. Moreover, the trial court properly instructed the jury that they were to decide the case solely upon the evidence introduced at trial and the law as instructed and that the statements of counsel do not constitute evidence. This issue is without merit.

Id. at 766.

The instant appeal basically presents the same situation. The prosecution's reference to this heightened state of intoxication was proper and relevant, providing the jury with a road-map of the proof to come. As previously mentioned, the record reflects that the defendant had driven from an accident on two flat tires with one of his lights dangling from his car; had evidenced numerous signs of intoxication when stopped by Officer Legieza; and had a blood alcohol content over twice that of the legal limit in Tennessee. Furthermore, as in Humphreys, the trial court properly instructed the jury regarding the fact that attorneys' comments do not constitute evidence and concerning the elements of the charged offenses. See id. The law presumes that juries follow the instructions they receive absent clear and convincing proof to the contrary, see State v. Vanzant, 659 S.W.2d 816, 819 (Tenn. Crim. App. 1983), and no proof of this nature is before this Court. For these reasons we conclude that this issue does not merit relief.


### Admission of "*Exhibit 4*, the Official Alcohol Report" Through Special Agent Henderson

The defendant also contends that the trial court erred by admitting "Exhibit 4, the Official Alcohol Report" through John Henderson, a special agent and forensic scientist with the Tennessee Bureau of Investigation. In support of this allegation, the defendant avers that Henderson's testimony did not fulfill the requirements of Tennessee Rule of Evidence 803(6), which governs the admission of documents as "Records of Regularly Conducted Activity." See Tenn. R. Evid. 803(6).

At the outset we observe that the State correctly points to a problem for the defendant with regard to this issue. Exhibit 4 is not the "Official Alcohol Report," containing the finding of .22 grams percent of ethyl alcohol present in the defendant's blood, but rather the "Alcohol/Toxicology Request." The report is actually exhibit 6. The record reveals that the defense objected to the admission of the toxicology request form but stated that it had no objection to the admission of the alcohol report; thus, the defendant may not now claim that the admission of the report constituted error. See Tenn. R. App. P. 36(a).

Moreover, in view of this determination, we need not evaluate the validity of his claim concerning exhibit 4. Even if this document, the toxicology request form, had been erroneously admitted, we fail to see how this would have "affirmatively affected the result of the trial on the merits." See Tenn. R. Crim. P. 52(a); see also, e.g., State v. Sean W. Conway, No. M2000-01263-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 336, at *18 (Tenn. Crim. App. at Nashville, May 8, 2001). Neither portion of this issue entitles the defendant to relief.

-6-

## Lesser Included Instruction

In his fifth issue the defendant asserts that the trial court erred by determining that Tennessee Code Annotated section 55-10-418(a), dealing with adult driving while impaired, was not a lesser included offense of Tennessee Code Annotated section 55-10-401, which defines driving under the influence of an intoxicant. However, recently decided cases clearly support the trial judge's determination. See State v. Cynthia C. Warren, No. W2000-002261-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 240, at *8 (Tenn. Crim. App. at Jackson, Mar. 14, 2002); State v. Willie G. Lofton, No. W2001-00780-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 128, at *6-*11 (Tenn. Crim. App. at Jackson, Feb. 14, 2002); State v. Gregory Flittner, M2000-02367-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 948, at *18-*20 (Tenn. Crim. App. at Nashville, Dec. 14, 2001); State v. Donald Lee Reid, No. M2000-02026-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 699, at *10-*14 (Tenn. Crim. App. at Nashville, Sept. 7, 2001); Humphreys, 70 S.W.3d at 763-64; see also State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999).

## Validity of Count 2 of the Indictment

Through his sixth issue the defendant asserts that a variation between the language of count two of the indictment and of Tennessee Code Annotated section 55-10-401(a)(2) rendered the count null and void. Under this statute:

> [i]t is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while: . . . [t]he alcohol concentration in such person's blood or breath is ten-hundredths of one percent (.10%) or more.

Tenn. Code Ann. § 55-10-401(a)(2). However, the disputed count states that the defendant "unlawfully did drive and physically control a motor vehicle upon the public roads . . . while the alcohol concentration in [the defendant's] blood or breath was twenty-hundredths of one percent (.10%) or more, in violation of Tennessee Code Annotated, Section 55-10-401." (Emphasis added.)

Neither party noticed the variance until it was brought to their attention by a question submitted by the jury. The jurors asked, "Question regarding Count 2, 13[th] line. The written number is 'twenty-hundredths of one percent' and the typed number is '(.10%) or more.' The 'Official Alcohol Report' dated April 26, 2000 shows the alcohol amount at 0.22 (%). Is there an inconsistency in the description of the second count?"

After receiving this inquiry, the trial court discussed the situation in open court with the attorneys. Defense counsel stated, "I don't think you can comment on anything, and I'd ask that." The court replied, "Your request is just that I respond that the evidence has been concluded, and I can't comment on the evidence." Defense counsel agreed. The State indicated that it had no better response. The trial court then announced, "My response will be: 'The evidence and arguments in this case have concluded. The court cannot comment on any of the evidence.'" No other suggestions

were offered, and the court's written reply was "The evidence and arguments in this case have been completed, and the Court is prohibited from commenting on the evidence."

Less than half an hour later the jury returned, finding the defendant guilty of count 2 of the indictment. After the jury was excused, sentencing was to begin; however, defense counsel asked the court to dismiss this conviction. To support this request, the defendant argued that the indictment as drafted did not correctly state an offense and was, therefore, void ab initio. Furthermore, the defense asserted that double jeopardy had attached requiring the dismissal of the charge at that point. In denying the defendant's request, the trial court replied that the timing of the request concerned the court; that it does state a violation of Tennessee Code Annotated section 55-10-401, including ".10"; and that any discrepancies had been clarified by the proper jury instruction.

In his argument before this Court, the defendant correctly cites Tennessee Rule of Criminal Procedure 12(b)(2) for the proposition that "defects in the indictment . . . [resulting in a] fail[ure] to show jurisdiction in the court or to charge an offense" are not limited to being raised pre-trial. See Tenn. R. Crim. P. 12(b)(2). Furthermore, Tennessee Code Annotated section 40-13-202, in pertinent part, provides that an

> indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment.

Tenn. Code Ann. § 40-13-202.

However, in State v. Hill the Tennessee Supreme Court noted that "the purpose for the traditionally strict pleading requirement was the existence of common law offenses whose elements were not easily ascertained by reference to a statute. Such common law offenses no longer exist." State v. Hill, 954 S.W.2d 725, 728 (Tenn. 1997). Our supreme court quoted this language in a subsequently decided case adding that "[w]ere we to hold otherwise, we would be embracing technicalities that are empty and without reason." Crittenden v. State, 978 S.W.2d 929, 931 (Tenn. 1998); see also, State v. Hammonds, 30 S.W.3d 294, 299 (Tenn. 2000) (quoting Crittenden, 978 S.W.2d at 931). Furthermore, the supreme court has observed that

> an indictment is sufficient to satisfy the constitutional guarantees of notice to the accused if the indictment contains allegations that (1) enable the accused to know the accusation to which answer is required; (2) furnish the trial court an adequate basis for entry of a proper judgment; and (3) protect the accused from a subsequent prosecution for the same offense.

see also Hill, 954 S.W.2d at 727.

Applying these standards to the issue presented to us through this appeal, we find that count 2 provided the trial court adequate basis for entry of a proper judgment, informed the defendant of the charge he was to answer, and sufficiently stated an offense. The conviction flowing therefrom

may, thus, stand.[5]  In support of this conclusion, we observe that count 2 cited Tennessee Code Annotated section 55-10-401 and essentially tracked the language of subsection (a)(2). Though the alpha value ("twenty-hundredths") obviously varied from the language provided in the statute, the numerical value (".10 ") included in the count coincided with that from the statute.[6] Under this set of facts, we find that the count sufficiently apprized him of the charge that he faced. As evidence of this determination's validity, we need look no further than the fact that all aspects of the trial, except for the jury's returning the verdict, had been completed when the variation was brought to the trial court's attention by the jury itself. At that time the defense candidly acknowledged that it had not noticed the variation.  While the State should have corrected the discrepancy prior to trial, precedent instructs us to "approach 'attacks upon indictments . . . from the broad and enlightened standpoint of common sense and right reason rather than from the narrow standpoint of petty preciosity, pettifogging, technicality or hair splitting fault finding.'" Hill, 954 S.W.2d at 728 (quoting United States v. Purvis, 580 F.2d 853, 857 (5th Cir. 1978)); see also, Hammonds, 30 S.W.3d at 299. Considering count 2 in this light, we conclude that this count met the constitutional requirements of notice and sufficiently fulfilled Tennessee Code Annotated section 40-13-202. This issue, thus, lacks merit.[7]

### Sentencing

Through his final contention the defendant alleges that the trial court erred by sentencing him to serve thirty days, day for day, for this offense. He challenges no other aspect of his sentence here.

Statutory authority provides that we are to conduct a de novo review with a presumption of correctness concerning sentencing matters. See Tenn. Code Ann. § 40-35-401(d). Nevertheless, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) (Sentencing Commission Comments). Ordinarily, a trial court is required to make specific findings on the record with regard to sentencing determinations. See Tenn. Code Ann. §§ 40-35-209(c), 40-35-210(f). However, the Tennessee Supreme Court has stated that review of misdemeanor sentencing is de novo with a presumption of correctness even if the trial court did not make specific findings of fact on the record because "a trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with

---

[5] There appears to be no claim that the instrument did not "protect the [defendant] from a subsequent prosecution for the same offense," and we see no basis for such an assertion.

[6] We additionally observe that a finding of twenty-hundredths of one percent of alcohol in the defendant's blood would satisfy the ten-hundredths of one percent or more requirement set out in Tennessee Code Annotated section 55-10-401(a)(2).

[7] While this does not bear on the facial validity of this instrument, we agree with the prosecution's observation that any potential confusion inured to the defendant's benefit as the jurors theoretically may have believed that the State needed to prove that the defendant's blood had contained twenty-hundredths of one percent of alcohol or more. The record would clearly support such a finding since the alcohol report states that the defendant's blood alcohol level was .22.

the legislative mandates of the misdemeanor sentencing statute." State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998).

The latter statute provides that the trial court shall impose a specific sentence consistent with the purposes and principles of the Criminal Sentencing Reform Act of 1989. See Tenn. Code Ann. § 40-35-302(b); State v. Palmer, 902 S.W.2d 391, 392 (Tenn. 1995). This Court has also noted that

> statutory enhancement and mitigating factors do not have to be the only factors considered by the trial court in determining the appropriate [misdemeanor] sentence. Indeed, consideration of the statutory enhancement factors may very well be futile in the area of misdemeanor sentencing since the very terms of certain enhancement factors limit their application solely to felony offenses. See, e.g., Tenn. Code Ann. § 40-35-114(11), -114(12), -114(13), -114(14) (Supp. 2001). Accordingly, the court should examine the misdemeanor offense in the light and character of the circumstances of the offense as well as under the mandated sentencing principles. State v. Brannon, 1996 Tenn. Crim. App. LEXIS 208, No. 03C01-9508-CR-00233 (Tenn. Crim. App. at Knoxville, Apr. 3, 1996), perm. to appeal denied, (Tenn. 1996) (citing Gilboy, 857 S.W.2d at 889 (Tenn. Crim. App. 1993)).

State v. Robbie Gene Powers, No. W2001-01950-CCA-R3-CD, 2002 Tenn. Crim. App. Lexis 437, at *16-*17 (Tenn. Crim. App at Jackson, May 16, 2002). Furthermore, a defendant convicted of a misdemeanor, unlike a defendant convicted of a felony, "is not entitled to the presumption of a minimum sentence." State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). Since driving under the influence (first offense) is a class A misdemeanor, the maximum sentence an offender can receive upon conviction is eleven months and twenty-nine days. See Tenn. Code Ann. § 55-10-403(a)(1).

Turning to the present conviction, we note that there are additional specific sentencing requirements for driving under the influence. As a first offender, the minimum period of confinement that the defendant would have ordinarily faced was forty-eight hours. See Tenn. Code Ann. § 55-10-403(a)(1). However, since his blood alcohol content was twenty-hundredths of one percent or more, the minimum confinement period by statute is "seven (7) consecutive calendar days rather than forty-eight (48) hours." Tenn. Code Ann. § 55-10-403(a)(1).

The defendant acknowledges the latter but asserts that the trial court inappropriately utilized three alleged statutory justifications to enhance his confinement beyond this to thirty days. These statutory provisions were Tennessee Code Annotated sections 40-35-103(1)(B), 40-35-114(10), and 40-35-114(16). We will, thus, consider the guidelines applicable to utilizing these.

In announcing the sentence, the trial court relied, in part, on the initial portion of Tennessee Code Annotated section 40-35-103(1)(B), which states that "[c]onfinement is necessary to avoid depreciating the seriousness of the offense." See Tenn. Code Ann. § 40-35-103(1)(B). Caselaw states that this provision is only to be applied when "the nature of the offense . . . outweigh[s] all factors favoring probation" and when the circumstances surrounding the commission of the crime are "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree." State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991).

Beyond this consideration the trial court also relied on enhancement factor (10), i.e., that "[t]he defendant had no hesitation about committing a crime when the risk to human life was high."

See Tenn. Code Ann. § 40-35-114(10). This Court has previously stated that enhancement factor (10) may only be applied to convictions for this type of offense when proof exists "that other persons or motorists were either in the vicinity or placed at risk by Defendant's conduct." State v. Janice Carol Biskner, No. E2000-01440-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 887, at *39-*40 (Tenn. Crim. App. at Knoxville, Nov. 13, 2001); see also State v. John D. Neblett, No. 01C01-9805-CC-00231, 1999 Tenn. Crim. App. LEXIS 934, at *8-*9 (Tenn. Crim. App. at Nashville, Sept. 24, 1999).

Finally, the trial court found enhancement factor (16), that "[t]he crime was committed under circumstances under which the potential for bodily injury to a victim was great," applied to the facts of this case. See Tenn. Code Ann. § 40-35-114(16). In State v. Imfeld, the Tennessee Supreme Court has recently attempted to further clarify when this factor may be properly utilized. See State v. Imfield, 70 S.W.3d 698, 706-07 (Tenn. 2002). Therein the court stated that "[t]here is nothing in the statutory language of the enhancement factor to indicate that it applies to potential victims or that it applies simply because the offense was committed in the presence of other individuals." Id. at 706. The court went on to compare enhancement factors (10) and (16), noting that the former

> is broadly written to include "risk to human life," and it does not contain the restrictions to "the crime" and "a victim" that are contained in Tenn. Code Ann. § 40-35-114(16). . . . [T]he statutory distinctions must be given proper effect to determine which factor is applicable or whether both are applicable.

Id. at 707.

Applying these guidelines to the facts of the offense involved in this case, we agree that enhancement factor (16) may not appropriately be used here. Furthermore, the application of the depreciation of the offense consideration to this situation may be questionable. However, we need not reach this matter as we find that enhancement factor (10) adequately supports the trial court's ordering the defendant to serve thirty days.

The record reveals that the defendant struck a vehicle parked in a restaurant lot three times before driving from the scene. The restaurant general manager testified that the defendant "rammed" this vehicle in the defendant's third attempt to turn a corner in the lot. After seeing what had happened, the manager moved to block the defendant's exit, but the defendant continued driving toward this man standing in front of him. The manager ultimately had to move from the path of the on-coming car. When stopped shortly thereafter in the vicinity of the restaurant, the defendant, among other things, could not figure out how to free himself from his seat belt and denied having been in an accident in spite of his car's condition. Subsequent testing revealed that his blood alcohol level had been over two times the legal limit. Though absolutely no proof was offered concerning individuals endangered in traffic while the defendant was driving, certainly the manager was at risk from the significantly impaired defendant who had rammed a vehicle only moments before failing to stop for the manager.

As above explained, those convicted of misdemeanors are not entitled to the presumption of a minimum sentence. See Creasy, 885 S.W.2d at 832. For this and the other aforementioned reasons, we conclude that the trial judge did not exceed the "wide latitude of flexibility" afforded him in misdemeanor sentencing and that ordering the defendant to serve thirty days is consistent with the

-11-

principles of the sentencing act. <u>See</u> <u>State v. Jacquie Upchurch Giardina</u>, No. E2001-00581-CCA-R3-CD, 2002 Tenn. Crim. App LEXIS 401, at *9 (Tenn. Crim. App. at Knoxville, May 2, 2002). This issue, thus, also lacks merit.

## <u>Judgment Form</u>

Finally, though this matter was not raised, we have observed an error in the judgment form requiring correction. The form indicates that the defendant was convicted of "DUI-3RD OFFENSE." Nevertheless, the entire remainder of the record reflects that the jury convicted and the trial court sentenced the defendant as a first offender  To avoid any possible future confusion, a corrected judgment form stating the "Conviction offense" as "DUI-1ST OFFENSE" should be entered.

## <u>Conclusion</u>

For the forgoing reasons we find that none of the issues raised merit relief. Accordingly, the judgment of the trial court is AFFIRMED. However, the case is remanded for correction of the judgment form as above-provided.

_____
JERRY L. SMITH, JUDGE