IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 13, 2004 Session

## STATE OF TENNESSEE v. LARRY ALLEN BLAYLOCK

**Direct Appeal from the Circuit Court for Carroll County**
**No. 03CR9      C. Creed McGinley, Judge**

---

**No. W2003-02436-CCA-R3-CD  - Filed September 29, 2004**

---

The defendant appeals his conviction for Class A misdemeanor assault and the refusal of the trial court to impose an alternative sentence of judicial diversion or full probation.  After review, we reverse the conviction for the trial court's failure to instruct on self-defense.  In the event of further appellate review, we have considered all issues raised on appeal.  The cause is remanded for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Matthew M. Maddox, Huntingdon, Tennessee, for the appellant, Larry Allen Blaylock.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; G. Robert Radford, District Attorney General; and Eleanor Cahill, Assistant District Attorney General, for the appellee, State of  Tennessee.

## OPINION

### Factual Background

The defendant, Larry Allen Blaylock, was indicted for attempted rape and assault by bodily injury.  The defendant was acquitted by a jury of the attempted rape, a Class C felony, and convicted of assault by bodily injury, a Class A misdemeanor.  The trial court rejected the defendant's application for judicial diversion or, alternatively, full probation and sentenced the defendant to eleven months and twenty-nine days with probation after forty-five days service.  The defendant appeals his conviction, alleging that the trial court erred in refusing to charge Class B misdemeanor as a lesser included offense and in its failure to instruct on self-defense.  The defendant also alleges

error in sentencing due to the trial court's denial of judicial diversion and full probation. We conclude that the trial court erred in failing to charge self-defense, reverse the conviction, and remand for a new trial. We find no error in the trial court's refusal to charge Class B misdemeanor or in sentencing.

Jessica Cozart testified that on August 14, 2002, the defendant came to her home offering her some furniture. Instead of transferring the furniture, they rode around for several hours drinking beer and Wild Turkey. She stated that at first nothing untoward happened and that "[i]t was what we usually do, just rode around and talked." The defendant stopped in a remote area of Carroll County known as King's Levee. She said that the defendant then jerked her out of the truck, placed her in an arm hold, and slammed her against the truck. The defendant then removed her pants and ripped off her panties. She resisted, and the defendant slammed her into the truck during the struggle. The defendant gave up the struggle, and the victim gathered her pants and one flip-flop before the defendant put her back in the truck. She said that the defendant drove off the road once while carrying her home. When they arrived at her house, she jumped out of the truck and ran inside. After spending the night at her cousin's home, Mrs. Cozart made a formal complaint the following day. Pictures were taken of her injuries and a statement was taken by David Bunn, an investigator for the Carroll County Sheriff's Department. Bunn and the victim rode to King's Levee in an unsuccessful search for the site of the victim's missing panties and flip-flop. The victim later went to the hospital for a routine examination.

Angelina Crowell, the victim's cousin, testified that the victim came to her home the evening of August 14th. Mrs. Crowell said the victim had a bruise on her face, two around her waistline, and one on the arm. Mrs. Crowell transported the victim to the jail the following day to file a complaint.

Sue Barnes, Jail Administrator for the Carroll County Sheriff's Department, talked with the victim on August 15th. Barnes also took pictures of the victim's bruises.

David Bunn testified that he talked with the victim and took her statement. Bunn observed a bruise on the victim's face. He related that the victim accompanied him on a drive to King's Levee. They were unable to find the site where the victim alleged she was attacked.

Billy Hodges testified that the victim called him the evening of August 14th, saying she was afraid and asking for him to come after her. Hodges first took her to Lucas Rawls' home, then later to Angelina Crowell's.

Chris Cozart, the victim's husband, testified that he had had a "rocky relationship" with the victim. His wife had taken criminal warrants against him for domestic abuse. He stated that she exaggerated some complaints but also had been "basically pretty honest" about the charges.

Lucas Rawls testified that he received a call from Billy Hodges on the night of August 14th that the victim was at Rawls' home. Rawls instructed Hodges to get her out of the house.

Sergeant Ricky Sawyers of the McKenzie Police Department, testified that the defendant came to McKenzie City Hall the night of August 14th. The defendant reported that a girl had caused him to run off the road and to leave ruts in a yard. Sawyers looked at the defendant's truck and told the defendant to contact the landowner.

Allen Blaylock, the defendant, testified in his own behalf. He stated that in August of 2002, he was planning to enter active military service. He had offered some of his furniture to the victim. On August 14th, he stated that he went to the victim's home with the intention of taking her to get the furniture. The victim suggested they "get a bottle" so he drove to Paris and bought a pint of whiskey. The pair then rode the back roads, drinking the whiskey, and eventually went to Blaylock's house. The victim suggested they get the furniture later. They rode around more and consumed the whiskey, then the victim wanted some beer. After buying a six-pack of beer, they rode around more and stopped several times to relieve themselves. Blaylock stated that during one stop, the victim vomited and then fell in a ditch while using the bathroom. He said she had gotten muddy, and he helped her up and helped her get her pants back on. He said she was very intoxicated. Later, he said the victim kept putting her muddy feet on the seat of the truck and, at one point, stomped the interior door with her foot. The victim became angry and accused the defendant of being an undercover snitch. The victim became sick again, Blaylock stopped the truck, and she fell out the door. After the victim got back in the truck, Blaylock started driving her home. She started cursing him and kicking at him. He stated this happened two or three times and on each occasion, he stopped and pushed her back by the arms. At one point, she jerked the steering wheel, causing him to run off the road. At her house, Blaylock said the victim started cursing him again. He ordered her out of the truck, and she grabbed him by his hair. He stated that he grabbed her by her arms and eventually pushed her out. Blaylock went from there to the McKenzie City Hall and talked with Sergeant Sawyers.

## Lesser Included Offense

The defendant asserts that the trial court erred in declining to charge Class B misdemeanor assault as a lesser included offense of Class A misdemeanor assault. The trial court has a duty to instruct the jury on any lesser included offenses of the charged offense when such instruction is supported by the evidence, regardless of whether the defendant has requested such an instruction. State v. Bowles, 52 S.W.3d 69, 74 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 464 (Tenn. 1999). The standard for an appellate court's review of the trial court's charge to the jury regarding lesser included offenses is *de novo* with no presumption of correctness. State v. Moore, 77 S.W.3d 132, 134 (Tenn. 2002).

If an offense is found to be a lesser included offense, the court must next ascertain whether the evidence justifies a jury instruction on the lesser included offense. Bowles, 52 S.W.3d at 75. To do so, the court must first determine whether there is evidence that "reasonable minds" could accept to establish the lesser included offense. Burns, 6 S.W.3d at 469. The court must view the evidence liberally in a light most favorable to the existence of the lesser included offense without judging its credibility. State v. Ely, 48 S.W.3d 710, 722 (Tenn. 2001); Burns, 6 S.W.3d at 469.

Finally, the court must determine if the evidence is "legally sufficient" to support a conviction for the lesser included offense. Burns, 6 S.W.3d at 469.

In this case, the victim clearly sustained various bruises which is a "bodily injury" as defined by Tennessee Code Annotated section 39-11-106(a)(2). We rely upon State v. Smiley, 38 S.W.3d 521 (Tenn. 2001), as controlling authority concerning this issue. Therein, our supreme court held that Class B misdemeanor is a lesser included offense but is subject to the second prong of the Burns test, that is whether the evidence is legally sufficient to support a conviction for the lesser included offense. Id. at 525. Because bodily injury was sustained in Smiley, it was held that the jury should not have been instructed on the lesser included offense. Since the victim in this case sustained a bodily injury, we conclude that the trial court correctly refused to instruct the jury on this lesser included offense.

### Self-Defense

The defendant contends that he was entitled to a jury charge of self-defense. The trial judge has a duty to give a complete charge of the law applicable to the particular facts of the case, including every issue of fact material to the defense if raised by the evidence. State v. Sims, 45 S.W.3d 1, 9 (Tenn. 2001). To determine whether self-defense is fairly raised by the proof and must be instructed to the jury, "a court must, in effect, consider the evidence in the light most favorable to the defendant, including drawing all reasonable inferences flowing from that evidence." State v. Shropshire, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993). An individual is justified in using force against another person when he or she reasonably believes (1) that death or serious bodily injury is imminent and (2) that the force used is immediately necessary to protect against the other person's use or attempted use of unlawful force. Tenn. Code Ann. § 39-11-611(a).

The trial judge, at the motion for new trial, made the following observation: "The issue of self-defense was not really raised by the legitimate evidence. He denied that it occurred. She said it did. There was no evidence that he had protected himself from assault or anything of that nature . . . ." The State concedes that the trial judge's comments are "not precisely accurate" but maintains that proof relating to the victim's injuries did not correlate to the defendant's testimony. The State contends the defendant's testimony would only explain the bruises on the victim's arms. Considering the proof in the light most favorable to the defendant, we disagree with the State's conclusion. The defendant testified that the victim was very intoxicated and at one point fell in a ditch, muddying her clothes in the process. Later the victim became sick and fell out of the truck door. The defendant said that he stopped the vehicle two or three times when the victim was fighting him while he was driving. On those occasions, he pushed her back by the arms. He stated that he pushed her out of the truck at her house while defending himself. It is not unreasonable to infer that the victim's bruises resulted from these incidents. We conclude that the failure to instruct on self-defense violated the defendant's substantial rights and is not harmless error. Therefore, we reverse the conviction and remand the matter for a new trial.

**Sentencing**

In this case, the defendant was sentenced to eleven months and twenty-nine days, to serve forty-five days. The defendant contends that he was entitled to judicial diversion or, alternatively, full probation.

During the sentencing hearing, the defendant called two police officers as character witnesses. The first was Corporal Dennis Taylor of the McKenzie Police Department, who testified that he had known the defendant most of the defendant's life and had supervised him on the police force. Officer Taylor praised the defendant as being "straight up." Taylor felt that this offense by the defendant was an aberration and unlikely to happen again. On cross-examination, Officer Taylor was asked if he knew the defendant had been released by the Carroll County Sheriff's Department due to a "bad psychological."[1] Officer Taylor was unaware of this.

Assistant Chief Bobby Pate of the McKenzie Police Department stated that he had known the defendant most of his life and had supervised him as a policeman. He said the defendant had performed his duties as a policeman and given no cause for disciplinary actions. Chief Pate felt this offense was uncharacteristic of the defendant and would not likely happen again. When Chief Pate stated that incarceration would be inappropriate, he was questioned by the trial judge about the victim's injuries. Chief Pate said in response that he was unaware there were injuries and that usually required incarceration.

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides in part that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. See State v. Palmer, 902 S.W.2d 391, 393 (Tenn. 1995).

The trial court retains the authority to place the defendant on probation either immediately or after a time of periodic or continuous confinement. Tenn. Code Ann. § 40-35-302(e). The trial court has more flexibility in misdemeanor sentencing than in felony sentencing. State v. Troutman, 979 S.W.2d 271, 273 (Tenn. 1998). One convicted of a misdemeanor, unlike one convicted of a felony, is not entitled to a presumption of a minimum sentence. State v. Humphreys, 70 S.W.3d 752, 768 (Tenn. Crim. App. 2001). The burden of showing that a sentence is improper is on the appellant. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Whether an accused should be granted judicial diversion is a question which addresses itself to the sound discretion of the trial court. Upon review, this Court will not interfere with the refusal of the trial court to grant judicial diversion if there is "any substantial evidence to support the refusal" within the record. State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992) (quoting State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983).

---

[1] This psychological test was alluded to in cross-examination and in argument by the State but never proved by evidence.

There are certain criteria that the trial court must consider in weighing the appropriateness of a grant of judicial diversion, and they include: (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the status of the accused's physical and mental health, and (f) the deterrence value to the accused and others. The trial court should also consider whether judicial diversion will serve the ends of justice -- the interests of the public as well as the accused. See Hammersley, 650 S.W.2d at 355. Deterrence in judicial diversion is considered in the same manner as in probation cases; that is, the deterrence factor is assigned such weight, credit, and values as the circumstances warrant. State v. Michael, 629 S.W.2d 13, 15 (Tenn. 1982).

Probation is a privilege or act of grace which may be granted to an accused who is eligible and worthy of this largesse. Stiller v. State, 516 S.W.2d 617, 620 (Tenn. 1974). This defendant was eligible for probation. In determining whether to grant probation, the trial court must consider and weigh all of the Stiller factors which include the accused's criminal record, social history, physical and mental condition, the circumstances of the offense, the deterrent effect upon criminal activity of the accused and others, and the accused's potential for rehabilitation and treatment. Stiller, 516 S.W.2d at 620; see Tenn. Code Ann. § 40-35-103(5).

The trial court considered the defendant's application for judicial diversion or, alternatively, for probation, ruled that the violent aspects of the offense outweighed the mitigating factors, and called for a deterrent sentence. The trial court stated as follows:

> There were injuries. They were not serious bodily injury as defined by the statute. There was simply bodily injury, and it's clearly confirmed by the proof in this case.
>
> It is a crime of violence. It's a misdemeanor, but, nevertheless, it's a crime of violence.
>
> One might look at his record and see that he's been an officer, but that can be a two-edged sword. I don't personally think that they're held to a higher standard than lay people, but it's certain that they should know and follow the law.
>
> In this particular case, he, essentially, is asking the Court to allow him to escape this behavior so that he might enlist in the Army or some branch of the Armed Services, which he said he was going to do prior to this incident. I don't know if it's true or not true. I know that that is what he has represented.
>
> In this particular case, the Court is sentencing him to eleven months and twenty-nine days for assault.
>
> In this case, and considering the record as a whole, and particular giving -- as I looked through the record, he's got a lot of qualifications. Those are not commendations. They're simply that he has qualified for various things throughout

his military career. I think there was various schools. There's also basic Police Academy and things like that, but they're not meritorious service, valor, anything like that.

I've considered lack of criminal record in this case. Nevertheless, I feel that there must be something as far as deterrence, and that's the reason that I questioned Chief Pate as far as his understanding in this case when he said that he felt that no incarceration was appropriate. It was obvious that when he found that there was injury and knew more about the facts of the case, that he would not stand by that earlier assessment.

In this case, there must be something to deter others that would engage in this type of conduct. It's basically almost a domestic assault type of situation although he was not charged with domestic assault since there was not a relationship that would support that.

Violence as far as assaultive offenses, particularly male against female or female against male, are becoming of increasing concern in today's society. They lend themselves to all matters of harm, and they simply cannot be tolerated.

In this case, I'm going to require that he serve forty-five days of this eleven month and twenty-nine day sentence in confinement. The balance of that will be on supervised probation.

I do not feel that it's an appropriate case for judicial diversion. First of all, it is a crime of violence, as I have indicated. Also, considering the need for deterrence. The record as a whole simply does not support that this should be appropriate for judicial diversion. Your motion will be overruled.

The trial court declined to grant the defendant an alternative sentence. The trial court, weighing the record as a whole, felt that due to the violence involved and the need for deterrence, alternative sentencing was inappropriate. We cannot say that this was an abuse of the trial court's sound discretion. We therefore affirm the sentence.

### Conclusion

After a thorough review, we find no error in the refusal of the trial court to instruct the jury on Class B misdemeanor assault or in the sentence imposed. However, the failure to instruct on self-defense requires reversal and remand for a new trial.

_____
JOHN EVERETT WILLIAMS, JUDGE