# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned on Briefs January 11, 2005

## STATE OF TENNESSEE v. STEVE JOHNSON

**Direct Appeal from the Circuit Court for Obion County**
**No. 4-45     William B. Acree, Jr., Judge**

_____

**No. W2004-01444-CCA-R3-CD  - Filed March 16, 2005**

_____

The defendant was convicted of theft under $500 and evading arrest, and was sentenced to two consecutive sentences of eleven months and twenty-nine days at 75% release eligibility.  On appeal, he challenges the sufficiency of the evidence, the failure to admit the testimony of a defense witness, and the length and consecutive nature of his sentences.  Upon thorough review, we affirm the judgments and the sentences.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and J.C. MCLIN, JJ., joined.

Joseph P. Atnip, District Public Defender, and William K. Randolph, Assistant Public Defender, for the appellant, Steve Johnson.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General;  Thomas A. Thomas, District Attorney General; and Allen Strawbridge, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Facts and Procedural History

The defendant, Steve Johnson, was indicted on one count of theft of property under $500 (a Class A misdemeanor), and one count of evading arrest (a Class A misdemeanor).  Following a jury trial, the defendant was convicted on both counts and the trial court imposed two consecutive sentences of eleven months and twenty-nine days on the charges.  The defendant now appeals to this Court, contesting the sufficiency of the evidence, the failure to admit the testimony of a defense witness, and the length and consecutive nature of his sentences.

At trial, Justin Roman ("Roman") testified that he was employed at the Movie Gallery video rental store and was present on the evening of the incident in question.  On that evening, he was alerted, while on break, that the defendant had entered the store.  Thereafter, he went

inside and notified the police of the defendant's presence. Roman stated that the defendant was accompanied by another individual, later identified as Tara Roney ("Roney"), and that the two walked around the store and talked. As they attempted to leave the store, the security scanner sounded, indicating that merchandise was being taken from the store. Roman stated that the defendant pushed Roney towards the counter and said, "You'd better pay for that." He further stated that Roney then walked to the counter and attempted to rent the video she had in her possession; however, when it was discovered she did not have an account with the store, some of the employees had to open an account for her.

Roman testified that, in the meantime, the defendant exited the store as the first officer arrived on the scene. Roman then walked out of the store and heard an officer yell, "Somebody grab that," in reference to a game which was lying on the ground next to the car the defendant had been standing beside. Roman picked the item up and later identified it at trial as a Playstation 2 game valued at between $40 and $45.

At trial, Roman acknowledged that the alarm could have been "set off by one or more items passing through [the scanner] at the same time." He further stated that the defendant and Roney "were touching each other really close together as they left." On cross-examination, Roman admitted that he did not see the defendant remove the game from the store or drop the game from his clothing. Finally, he stated that, at the time of the incident, he was not sure whether the individual in the store was the defendant or his brother.

Responding Officer Tack Simmons ("Officer Simmons"), a patrolman with the Union City Police Department, then testified that he was the first officer to arrive at the Movie Gallery store on the night in question. Officer Simmons stated that, upon arrival, he pulled to the front of the building where he witnessed the defendant leaving the store. He then exited the police car in an attempt to speak with the defendant; however, the defendant appeared nervous, "trotted" to his car, and opened the door. Fearing for his safety, Officer Simmons instructed the defendant to get out of the car, but the defendant "kept fidgeting with something under the seat." He stated that the defendant then stepped away from the car, and a Movie Gallery case fell from beneath his coat to the ground. Officer Simmons testified that the defendant then backed away, fled the scene, and ignored his repeated order to stop. He further stated that he called to the manager of the store to pick the item up and then began to chase the defendant. At that time, a second responding officer arrived and, observing that the defendant was fleeing the scene, attempted to use his patrol car to "head [the defendant] off." The second officer then exited his cruiser and eventually apprehended the defendant.

On cross-examination, Officer Simmons acknowledged that he knew both the defendant and his brother. Moreover, he testified that the dispatch call he received related that the defendant's brother was possibly in the Movie Gallery store. He also admitted that he did not see the defendant take the video game from the shelf or conceal it. However, he reiterated that he did see the game fall from the defendant's coat.

The defendant then testified that he took Roney into the Movie Gallery Store and that they were followed around the store as they shopped. He stated that he believed the employees

were suspicious of him because they had mistaken him for his brother, who was pictured behind the counter. The defendant further testified that, frustrated with being followed, he left the building to find a police car waiting outside. He stated that the officer tried to "tackle" him and he ran.

Regarding the item in question, the defendant testified that he had no use for a video game and did not steal it. He further stated that he did not see the game until the officers brought him back to the police car. Finally he testified that, although the game was Roney's, she was not charged with the theft.

Following the presentation of evidence, the jury accredited the testimony of the State's witnesses and returned a verdict of guilty on both charges. Thereafter, the court imposed two consecutive sentences of eleven months and twenty-nine days to be served at 75% release eligibility. The defendant now appeals, challenging the sufficiency of the evidence, the trial court's failure to admit the testimony of a defense witness, and the sentence imposed. Upon our review, we affirm the judgments and the sentences.

Analysis

I. Sufficiency

The defendant first challenges the sufficiency of the evidence to support the verdict. In determining sufficiency, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict, once approved by the trial judge, accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). Accordingly, the State is entitled to the strongest legitimate view of the evidence and all legitimate and reasonable inferences which may be drawn therefrom. Id. It is our duty to affirm the conviction if the evidence, viewed under the appropriate standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003).

Although the evidence of the defendant's guilt is circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993). The circumstantial evidence, however, must exclude every other reasonable theory or hypothesis other than guilt. Tharpe, 726 S.W.2d at 900. In addition, "it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime." Id. (citations omitted).

Viewed in a light most favorable to the State, the record reflects that the defendant and Roney walked into the Movie Gallery store and shopped for a few minutes. As the two started out of the store, walking "really close together," the security scanner sounded, indicating that merchandise was being taken from the store. The defendant then told Roney that she should pay

for the item she was holding, and the defendant proceeded out of the store. Upon seeing an officer outside, the defendant appeared nervous and "trotted" to his car, where he "fidgeted" with something under the seat. After exiting the car at the officer's behest, a Movie Gallery case fell from beneath the defendant's coat to the ground. The case was ultimately discovered to contain a Playstation 2 game, valued at between $40 and $45. The defendant then fled the scene but was eventually apprehended by a second responding officer. We conclude that the evidence presented was sufficient for a rational trier of fact to find the defendant guilty of the charged offenses. As such, the judgments are affirmed.

## II. Exclusion of Testimony

As his next issue, the defendant contends that the trial court erred in precluding him from presenting the statements made by Roney to his fiancée, Bobbie Forrest ("Forrest"), via Forrest's testimony. He argues that the testimony was not hearsay but was admissible as a declaration against Roney's penal interest, pursuant to Tennessee Rule of Evidence 804(b)(3). That rule provides in pertinent part:

(b)     The following are not excluded by the hearsay rule **if the declarant is unavailable as a witness**:

. . . .

(3)     Statement Against Interest. - A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Tenn. R. Evid. 803(b)(3) (emphasis added).

In the present case, the defendant avers that the trial court should have allowed Forrest to testify regarding alleged inculpatory statements made by Roney to Forrest following the incident at Movie Gallery. However, the defendant fails to show the requisite unavailability of the declarant. Section (a) of Rule 804 enumerates various ways in which a declarant may be shown to be unavailable as a witness. The defendant in this case relies on subsection (a)(5), which states that the witness is unavailable if the declarant "[i]s absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance by process." Tenn. R. Evid. 803(a)(5).

At trial, however, counsel for the defense candidly stated:
And then finally, if Your Honor please, I had contacted my client yesterday, and he told me that this woman [Roney] has left the state and she's unavailable. So we would also ask the Court to allow it under 804(a), under the unavailability issue, is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance by process. I will tell the Court I have not

issued a subpoena for this woman. I didn't learn about this woman's existence until yesterday. Of course, I didn't talk to my client about this case until yesterday either.

Therefore, as the defense never attempted to serve Roney with process, she cannot be deemed an unavailable witness under this subsection and her statement cannot be admitted under this exception to the hearsay rule. Therefore, we conclude that the trial court did not abuse its discretion in denying admission of Forrest's testimony.

## III. Sentencing

Finally, the defendant challenges the propriety of the sentences imposed by the trial court. Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides in part that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. See State v. Palmer, 902 S.W.2d 391, 393 (Tenn. 1995). The misdemeanor offender must be sentenced to an authorized determinate sentence with a percentage of that sentence designated for eligibility for rehabilitative programs. Id. at 394.

The trial court retains the authority to place the defendant on probation either immediately or after a time of periodic or continuous confinement. Tenn. Code Ann. § 40-35-302(e). We further note that the trial court has more flexibility in misdemeanor sentencing than in felony sentencing. State v. Troutman, 979 S.W.2d 271, 273 (Tenn. 1998). One convicted of a misdemeanor, unlike one convicted of a felony, is not entitled to a presumption of a minimum sentence. State v. Humphreys, 70 S.W.3d 752, 768 (Tenn. Crim. App. 2001).

In the present case, a jury convicted the defendant of two misdemeanors, theft under $500 and evading arrest. At the sentencing hearing, the trial court emphasized the defendant's lengthy criminal record, which included: seven (7) forgery convictions; two (2) robbery convictions; two (2) petit larceny convictions; and one conviction each of burglary, theft, aggravated assault, receiving stolen property, and possession of a controlled substance. The trial court further found enhancement factors (2) and (9) applicable, due to the defendant's prior record and because he was on parole at the time of the offense, respectively. Consequently, the trial court imposed two consecutive sentences of eleven months and twenty-nine days, to be served at 75% release eligibility. Upon our review, we conclude that the sentences imposed by the trial court were within its discretion and were justified under the circumstances. The sentences are affirmed.

## Conclusion

Based on the foregoing and the record as a whole, the judgment and the sentences imposed by the trial court are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE