IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 2, 2008

## STATE OF TENNESSEE v. ROY SHOTWELL, JR.

**Direct Appeal from the Circuit Court for Fayette County**
**No. 5874     Weber McCraw, Judge**

-----

**No. W2008-00682-CCA-R3-CD  - Filed August 27, 2009**

-----

The defendant, Roy Shotwell, Jr., was convicted of two counts of rape, each a Class B felony, and one count of sexual battery, a Class E felony.  The defendant was sentenced to ten years for each Class B felony and to two years for the Class E felony.  The defendant received a total effective sentence of twenty years.  The defendant appeals, arguing that the trial court erred in:  denying his motion for a severance; allowing the State to offer expert witnesses on DNA and forensic nursing; and in sentencing. After careful review, we affirm the trial court's decisions to join the indictments in one trial and to admit the State's expert testimony.  Moreover, the trial court did not abuse its discretion in applying the enhancement factors or in ordering consecutive sentences.  Therefore, the judgments from the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, J., joined.  J.C. MCLIN, J., not participating.

Gary F. Antrican, District Public Defender, and Rickey W. Griggs and Kari I. Weber, Assistant Public Defenders, for the appellant, Roy Shotwell, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; D. Michael Dunavant, District Attorney General; and Terry Dycus, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the defendant's rape and sexual assault of his stepdaughter on separate occasions, once when she was thirteen years old and twice when she was fifteen years old.  The State originally charged him with three counts of rape.

At Trial

Officer Calvin Ridgell testified that he attended the police academy with the defendant and considered him to be his best friend. He said that he went to visit the defendant, as a friend, when he was incarcerated on the underlying charges. He asked the defendant if he had committed the crimes, and the defendant admitted he was guilty and "did it." The defendant told him that the sex was consensual, which angered the witness. The defendant acknowledged that he knew it was wrong.

A sergeant with the Fayette County Sheriff's Department testified that he relieved an officer who was with the defendant in the hospital on February 14, 2007. His job was to make sure the defendant did not leave. The defendant was seated in a chair in the triage room and stated, "I had sex with my stepdaughter. I know it was wrong and I'll pay for it." He further stated that he was in the hospital because he was thinking of cutting his wrists.

A registered nurse testified that she was employed at Methodist Fayette Hospital in Somerville and that she saw the defendant in the emergency room on February 14, 2007. She said that the defendant was brought in because he had been hearing voices. During the assessment of the defendant, he told her that he had done wrong and should have to pay for what he did.

The victim's mother testified that she was married to the defendant. On February 2, 2007, she discovered the victim's pajamas hidden under a towel behind the bed. She asked the victim why her pajamas were behind the bed. The victim said she did not know but told her mother what the defendant had done. She called the defendant and told him she was taking the victim to the hospital because the victim was sick. When the defendant came home, she confronted the defendant while they all sat outside in the truck. He initially denied the allegations. When the victim stated what the defendant had done to her, he turned around in the front seat, started playing with his hands, and held his hands down. He then apologized to the victim and her mother. He said that he started "messing" with the victim several years ago and that he was sorry. The victim's mother called the police, and the defendant was taken into custody.

The victim testified that when she was thirteen years old, the defendant called her into his bedroom and asked her to rub "IcyHot" on his back. She said that he was only wearing a towel around his waist and was lying on his stomach. She said that he moved the towel down his body, then got up, grabbed her arms, flipped her on the bed, held her arms down, and removed her clothes. She said that she begged the defendant to stop and tried to get away. The defendant penetrated her vagina with his penis.

The second sexual assault occurred when the victim was fifteen years old. She stayed at home because she was sick. The defendant entered the victim's bedroom, turned her over on her bed, spread her legs, and removed her clothes. The victim asked him to stop and unsuccessfully attempted to keep the defendant from opening her legs. The defendant again penetrated her vagina but, this time, used a condom. She said that this rape did not last long because the victim's brother called home, and the defendant left to pick him up from school.

The third incident occurred when the victim was fifteen years old. She said that she was washing dishes in the kitchen when the defendant pushed her into the living room and removed her

clothes. The defendant laid her on the couch and held her arms. The defendant penetrated her vagina with his penis while she begged him to stop.

The victim did not tell anyone about the incidents because she was afraid and because the defendant was a police officer. The defendant told her he would lose his job if she told anyone.

A nurse practitioner at the Memphis Sexual Assault Resource Center testified that she saw the victim on February 24, 2007. She took a history from the victim and performed a physical examination on her. The examination revealed that the victim had an injury to the rear of her hymen caused by blunt penetrating trauma.

A special agent with the Tennessee Bureau of Investigation (TBI) testified that she tested the victim's pajamas that were entered into evidence. There was sperm found in the crotch of the pajamas, and it matched the defendant's DNA.

The defendant called a forensic DNA examiner to testify on his behalf. The expert testified that she tested a piece of the fabric from the pajamas and that the defendant could not be excluded as a contributor of the DNA mixture found on the pajamas. However, she found female DNA that did not belong to the victim. On cross-examination she testified that the sperm found on the pajamas was a match to the defendant's DNA.

The defendant was convicted of two counts of rape and one count of sexual battery. He was sentenced to a total effective sentence of twenty years.

Analysis

On appeal, the State argues that this case is not properly before this court because the record does not contain an order disposing of the defendant's motion for new trial. The judgments of conviction were entered on December 21, 2007. On January 11, 2008, the defendant filed a timely motion for new trial. On February 15, 2008, the trial court denied the motion for new trial and ordered the defendant to prepare an order reflecting the same. On February 15, 2008, the defendant filed a notice of appeal. The record before us does not contain an order disposing of the defendant's motion for new trial. However, the accompanying record does include a transcript of the hearing on the motion for new trial which clearly shows that the motion was denied. The Tennessee Supreme Court has recently determined that a dismissal of an appeal is not warranted when the transcript of the hearing on the motion for new trial clearly indicates that the trial judge has ruled on the defendant's motion. *State v. Terry Lynn Byington*, No. E2006-02069-SC-R11-CD, 2009 Tenn. LEXIS 308, at \*\*6-7 (Tenn. May 5, 2009). Thus, because the record is clear that the trial court ruled on the motion, this court has jurisdiction over this case.

First, the defendant argues that the trial court erred in denying his motion for a severance. The trial court denied his motion to sever the offenses because all three rape offenses were subject to mandatory joinder. Trial court rulings addressing joinder and severance of offenses, pursuant to Rules of Criminal Procedure 8, 13, and 14, are reviewed for an abuse of discretion. *State v. Goodwin*, 143 S.W.3d 771, 780 (Tenn. 2004); *Spicer v. State*, 12 S.W.3d 438, 442 (Tenn. 2000).

A trial court's decision to consolidate or sever offenses will not be reversed unless the "court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999) (quoting *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997)).

Tennessee Rule of Criminal Procedure 8(a)(1) mandates joinder of the offenses, as alleged, arising from the "same conduct or aris[ing] from the same criminal episode." Tenn. R. Crim. P. 8(a)(1)(A). The Tennessee Supreme Court has explained that "[t]he purpose of Rule 8 is to promote efficient administration of justice and to protect the rights of the accused. The rule clearly permits a subsequently returned indictment to be joined with a previous indictment where the alleged offenses relate to the same criminal episode." *State v. Carruthers*, 35 S.W.3d 516, 573 (Tenn. 2000). Here, the indictments were all returned on the same date and dealt with the same conduct. Accordingly, all three counts of rape in this case met the criteria for mandatory joinder.

In support of his motion to sever, the defendant argues that the charges were not so distinctive as to be unable to be separated. Tennessee Rule of Criminal Procedure 14 provides that either the State or the defendant may obtain a severance of offenses when it is appropriate to promote a fair determination of the defendant's guilt or innocence. Tenn. R. Crim. P. 14(b)(2)(A). The trial court denied the motion to sever because the indictment entailed the same conduct and involved the same plan. Because, as found below, mandatory joinder was appropriate, the defendant's argument that the charges were subject to permissive joinder is without merit. The defendant has not demonstrated that the trial court abused its discretion or that he was prejudiced by the decision.

Next, the defendant argues that the trial court erred in allowing the State to offer expert witnesses on DNA and forensic nursing. Specifically, he contends that it was error to allow the State to offer expert testimony that: (1) the DNA found in the victim's pajamas matched his DNA; and (2) the victim had injuries to her vaginal area caused by blunt trauma. The propriety, scope, manner, and control of the examination of witnesses are within the sound discretion of the trial court. *State v. Humphreys*, 70 S.W.3d 752, 766-67 (Tenn. Crim. App. 2001).

A witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, provided the scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue. Tenn. R. Evid. 702. An expert may base his or her opinion upon facts or data imparted to or perceived by the expert prior to or at a hearing; the facts or data need not be admissible if they are the type of facts or data reasonably relied upon by experts. Tenn. R. Evid. 703. If the underlying facts or data lack trustworthiness, the court shall disallow expert testimony based upon them. *Id*. Evidence and expert testimony regarding scientific theory must be both relevant and reliable before it may be admitted. *McDaniel v. CSX Transportation, Inc.*, 955 S.W.2d 257, 265 (Tenn. 1997).

The trial court has broad discretion in resolving questions concerning the qualifications, admissibility, relevance, and competency of expert testimony. *State v. Stevens*, 78 S.W.3d 817, 832 (Tenn. 2002). An appellate court should not overturn a trial court's decision in admitting or

excluding a proposed expert's testimony unless it finds the trial court abused its discretion. *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993).

Here, a nurse practitioner and TBI agent were accepted as experts in their respective fields without objection from the defendant at trial. However, he did object to the testimony of the nurse practitioner upon grounds that the gap of time made any evidence from the victim's examination irrelevant. The trial court allowed the evidence and determined that the defendant's arguments went to the weight and not to the admissibility of the evidence. The defendant was given ample opportunity to cross-examine the witness and was able to question her about the cause of the trauma and the age of the injury to the victim. In fact, on cross-examination, the nurse practitioner testified that she could not date the injury to the victim and said that the injury could have occurred as a result of consensual sex. The testimony of the nurse practitioner was relevant, and the trial court did not abuse its discretion in admitting the testimony.

With regard to the testimony about the pajamas, the State argues that the defendant concedes in his brief that the victim's pajamas were relevant in order to show how the victim's mother became aware of the allegations against the defendant. However, he contends that the presence of his sperm in the victim's pajamas was irrelevant because the record did not contain any testimony from the victim that she was wearing the pajamas during any of the incidents.

The trial court allowed the testimony regarding the DNA in the pajamas following a jury out hearing. The victim testified that the pajamas belonged to her and that no one else wore the pajamas. The fact that they were found hidden in the defendant's bedroom and contained the defendant's sperm was relevant and was properly admitted by the trial court. The record does not reflect that the trial court abused its discretion in allowing the expert to testify regarding the pajamas.

Next, the defendant argues that the trial court improperly considered enhancing factors. The defendant was convicted of two Class B felonies and one Class E felony. The defendant was sentenced as a standard offender and subject to a range of eight to twelve years for each Class B felony and to a range of one to two years for the Class E felony. He was sentenced to ten years for each Class B felony and two years for the Class E felony.

The events underlying one of the defendant's convictions occurred between September 1, 2004 and December 31, 2004, prior to the enactment of the 2005 amendments to the Sentencing Act, which became effective June 7, 2005. The remaining two incidents occurred after the amendments became effective. During the sentencing hearing, the defendant announced to the court that he would waive his rights to be sentenced under the Sentencing Act in effect at the time of the commission of the first crime.

The amended sentencing statute no longer imposes a presumptive sentence. *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). As further explained by our supreme court in *Carter*,

> the trial court is free to select any sentence within the applicable range so long as the
> length of the sentence is consistent with the purposes and principles of [the

Sentencing Act]. [Tenn. Code Ann.] § 40-35-210(d). Those purposes and principles include the imposition of a sentence justly deserved in relation to the seriousness of the offense, [Tenn. Code Ann.] § 40-35-102(1), a punishment sufficient to prevent crime and promote respect for the law, [Tenn. Code Ann.] § 40-35-102(3), and consideration of a defendant's potential or lack of potential for . . . rehabilitation, [Tenn. Code Ann.] § 40-35-103(5).

*Id.* (footnote omitted); *see also State v. Eddrick Devon Pewitte*, No. W2008-00747-CCA-R3-CD, 2009 Tenn. Crim. App. LEXIS 5, at *23 (Tenn. Crim. App. at Jackson, Jan. 5, 2009).

Further, the 2005 Amendment to the Sentencing Act deleted appellate review of the weighing of the enhancement and mitigating factors as it rendered these factors merely advisory, as opposed to binding, upon the trial court's sentencing decision. *Id.* Under current sentencing law, the trial court is nonetheless required to consider an advisory sentencing guideline that is relevant to the sentencing determination, including the application of enhancing and mitigating factors. *Id.* at 344. The trial court's weighing of various mitigating and enhancing factors is now left to the trial court's sound discretion. *Id.* Thus, the 2005 revision to Tennessee Code Annotated section 40-35-210 increases the amount of discretion a trial court exercises when imposing a sentencing term. *Id.* at 344.

To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See id.* at 343; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). If our review reflects that the trial court applied inappropriate mitigating and/or enhancement factors or otherwise failed to follow the Sentencing Act, the presumption of correctness fails and our review is *de novo*. *Carter*, 254 S.W.3d at 345.

Here, the trial court applied the following enhancement factors pursuant to Tennessee Code Annotated section 40-35-114:

(4) The victim of the offense was particularly vulnerable because of age or physical or mental disability;

(7) The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement; and,

(14) The defendant abused a position of private trust.

The trial court placed great weight on factors (4) and (7). Additionally, the trial court applied a mitigating factor pursuant to Tennessee Code Annotated section 40-35-113 (13), any other factor consistent with the purposes of this chapter, that the defendant had no prior criminal activity.

-6-

The evidence reflects that all the enhancement factors applied were within the trial court's discretion. The evidence demonstrated that the victim lost her virginity to the defendant, her stepfather. The victim testified that she did not tell anyone about the rapes and assault because of the defendant's position as her stepfather and as a police officer. The defendant held a position of trust over the victim and made her particularly vulnerable. The offense was committed to gratify the defendant's desire for sexual pleasure or excitement. The record supports that the trial court was within its discretion to apply these enhancement factors, and they were not erroneously applied. The defendant is not entitled to a reduction in a sentence for his convictions.

Next, the defendant argues that the trial court erred in imposing consecutive sentences. Generally, it is within the discretion of the trial court to impose consecutive sentences if it finds by a preponderance of the evidence that at least one of following statutory criteria applies:

(1) [t]he defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) [t]he defendant is an offender whose record of criminal activity is extensive;

(3) [t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) [t]he defendant is sentenced for an offense committed while on probation; or

(7) [t]he defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b) (2006). The court may order sentences to run consecutively if it finds by a preponderance of the evidence that one or more of the statutory criteria exist. *State v. Black*, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). The trial court imposed partial consecutive sentencing based upon subsection (5), because the defendant was convicted of three crimes involving sexual

abuse of a minor.  The proof demonstrated that the defendant was the victim's stepfather and that the incidents occurred over a period of several years. The record further reflects that the victim was frightened to tell anyone about the abuse because the defendant was a police officer, as well as her stepfather.  The record reflects that it was within the trial court's discretion to impose consecutive sentences.  This issue is without merit.

## Conclusion

Based on the foregoing and the record as a whole, we affirm the trial court's decisions to join the indictments in one trial and to admit the State's expert testimony.  Because the defendant executed a waiver of his ex post facto provisions and was sentenced under the 2005 amendments to the Sentencing Act, the trial court did not abuse its discretion in applying the enhancement factors. Further, consecutive sentencing was properly imposed.

_____
JOHN EVERETT WILLIAMS, JUDGE